NATURAL RESOURCES DEFENSE COUNCIL, INC.; American Lung Association; American Lung Association of New York State, Inc.; Brooklyn Lung Association, Inc.; Queensboro Lung Association; and American Lung Association, Hudson Valley, Inc., Plaintiffs,

v.

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION; Henry G. Williams, as Commissioner, New York State Department of Environmental Conservation; United States Environmental Protection Agency; and Lee M. Thomas, as Administrator, United States Environmental Protection Agency, Defendants.

No. 87 Civ. 0505 (MEL).

United States District Court,
S.D. New York.

Sept. 9, 1987.

Donald S. Strait, Eric A. Goldstein, Natural Resources Defense Council, Inc., New York City, for plaintiffs; David Schoenbrod, assisting in preparation of brief, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for State defendants; James A. Sevinsky, David R. Wooley, Helene G. Goldberger, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for Federal defendants; Richard W. Mark, Asst. U.S. Atty., Michael M. Wenig, Land and Natural Resources Div., U.S. Dept. of Justice, Peter H. Wyckoff, Asst. Gen. Counsel, Richard Roos-Collins, U.S. Environmental Protection Agency, Washington, D.C., Joseph Siegel, Lisa Burianek, Asst. Regional Counsels, U.S. Environmental Protection Agency, Region II, New York City, of counsel.

LASKER, District Judge.

This citizens' suit, brought under § 304 of the Clean Air Act, 42 U.S.C. § 7604 (1982), by the Natural Resources Defense Council, Inc. and several New York area lung associations (collectively "NRDC"), concerns New York State's responsibility to reduce the level of the pollutant ozone in the air we breathe. Ozone is one of the primary ingredients of the smog which often envelopes the New York metropolitan area.[1] Exposure to ozone can impair lung functions, reduce resistance to respiratory infections, and aggravate asthma, bronchitis, and emphysema.[2] NRDC charges that the New York State Department of Environmental Conservation ("DEC") and its commissioner (collectively "the State") have failed to implement four major ozone-reduction strategies included in New York's state air quality implementation plan ("SIP"), in violation of their nondiscretionary duties under the Clean Air Act. NRDC moves for summary judgment on the State's liability and for relief in the form of a scheduling order.

This motion raises the following issues: (1) whether a finding of liability should be made against the state defendants because they have not implemented the four strategies according to the description and timetables set forth in the SIP; (2) whether dates should be set for implementing and completing these four strategies, and, if so, what these dates should be; and (3) what other provisions, if any, should be included in the scheduling order.

## I. State Defendants' Liability

### a) Overview of the Clean Air Act

A central purpose of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7401–7642 (1982), enacted by Congress in 1970 and amended in 1977, is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," 42 U.S.C. § 7401(b)(1). Under the framework of the Act, the Administrator of the U.S. Environmental Protection Agency ("EPA") must promulgate an air quality standard for any air pollutant that may reasonably be anticipated to endanger public health. See 42 U.S.C. §§ 7408(a)(1)(A), 7409(b)(1). Each state must then adopt and submit to EPA a plan for implementation, maintenance and enforcement of the air quality standard for each pollutant. See 42 U.S.C. § 7410(a). A state plan, once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state, with modifications

---

**1.** The environmental problem that is the subject of this motion—increased levels of ozone near ground level—should not be confused with the separate problem of stratospheric ozone depletion. The stratospheric layer of ozone, 15 to 30 miles above the surface of the earth, provides protection from the sun by blocking harmful ultraviolet radiation. Although the apparent depletion of this layer in recent years is a cause for concern, this problem has no relation to the present action.

**2.** See generally Affidavit of Dr. Edward F. Ferrand in Support of Plaintiffs' Motion for Partial Summary Judgment on Liability of State Defendants (March 26, 1987).

permitted "only cautiously and grudgingly." *Friends of the Earth v. Carey*, 535 F.2d 165, 169 (2d Cir.1976).

The original goal of the Act was to achieve substantial attainment of the air quality standards by 1977. However, when it became clear in 1977 that many states had failed to meet the appropriate standards, Congress extended the deadline for nonattaining states to December 31, 1982. *See Connecticut Fund for Environment v. E.P.A.*, 672 F.2d 998, 1001 (2d Cir.), *cert. denied sub nom. Manchester Environmental Coalition v. E.P.A.*, 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982); 42 U.S.C. § 7502(a)(1). An additional extension until December 31, 1987 was provided under certain circumstances for states which had not attained the standards set for carbon monoxide or ozone. 42 U.S.C. § 7502(a)(2). However, these extensions were not granted automatically: "cognizant of the already lengthy history of delays and disappointments that had characterized previous efforts to combat pollution, Congress sought to build in some insurance that the [air quality standards] would be met by the new deadlines" by requiring each state which received an extension to submit a revised SIP that would meet stringent requirements set forth in 42 U.S.C. §§ 7501–7508. *Connecticut Fund for Environment*, 672 F.2d at 1001.

b) *New York's Ozone State Implementation Plan*

By the procedure described above, the State of New York sought and received an extension of time until December 31, 1987 to achieve the air quality standard set by the EPA for the pollutant ozone. As a prerequisite for obtaining the 1987 extension, New York submitted a revised ozone state implementation plan, which was approved by the EPA on June 17, 1985. 40 C.F.R. §§ 52.1672–73 (1986). Because manmade volatile organic compounds ("VOCs") are one of the primary ingredients of atmospheric ozone, the revised New York SIP included, among other things, commitments to study and implement strategies for reducing VOC emissions from four major sources: 1) gasoline service stations; 2) paint spraying operations at automotive body shops; 3) paints and other architectural coatings which are applied to both the exterior and interior surfaces of buildings; and 4) consumer and commercial solvent-based products such as aerosol sprays, rubbing compounds and polishes.[3] It is New York's failure to implement these four strategies according to the timetables set forth in the revised SIP which is the subject of this action and this summary judgment motion.

c) *Liability of the State Defendants*

It is undisputed that New York is far behind the schedules set in the revised New York SIP for implementation of the four strategies described above.[4] The parties, however, draw different conclusions from this fact. NRDC argues that because it is undisputed that New York has not complied with the revised SIP, summary judgment on the issue of the state defendants' liability can not be avoided. The State, however, argues that while it is willing to negotiate schedules for the four strategies, to grant summary judgment on the issue of liability would be inappropriate. The State claims that while it acknowledges its current obligation to carry out the strategies, it has been making reasonable efforts to implement the SIP, but has been delayed because of unavoidable technical difficulties and because other state and federal environmental authorities which share responsibility for im-

---

3. Complaint, Exhibit A, New York State Air Quality Implementation Plan, Control of Carbon Monoxide and Hydrocarbons in New York City Metropolitan Area, Amended in January 1984 ("New York SIP").

4. *See* Appendix A (summarizing the timetables set for the four strategies in the SIP and their current status).

plementation of certain strategies have failed to take timely action. Furthermore, at oral argument the State expressed concern that a finding of liability could trigger EPA-imposed sanctions in the form of funding cut-offs and withholding of federal grants, as provided for by the Clean Air Act.

■ NRDC is entitled to summary judgment on the issue of the State's liability. In *Friends of the Earth v. Carey*, 535 F.2d 165, 173 (2d Cir.1976), the Court of Appeals for this circuit emphasized the mandatory nature of the district court's responsibility to enforce implementation of the strategies set forth in a state implementation plan: "Once a citizen suit to enforce an EPA-approved state implementation plan has been properly commenced, the district court is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement." The very fact that the New York SIP has been violated mandates a finding of liability, regardless of the reasons for the violation. *See Friends of the Earth*, 535 F.2d at 178 ("The Act authorizes only two procedural routes for modifying the Plan.... In all other instances, the State is relegated to a lone option: compliance"); *cf. United States v. Ford Motor Co.*, 814 F.2d 1099, 1103–04 (6th Cir.1987) (infeasibility of strategy not grounds for invalidation of SIP), *appeal pending*.

The finding that the State is liable does not indicate that it has acted in a morally culpable manner or exhibited a lack of good faith. The finding of liability in this case is an objective determination, a "malum prohibitum," based solely upon the fact that the State is in violation of the implementation dates in its SIP. Finally, although the State's concern about sanctions is understandable, EPA's counsel has not indicated that EPA has any present intention of imposing sanctions on the State. At any rate, EPA retains the discretion to impose sanctions on the State for noncompliance with its SIP regardless of the outcome of this motion.

## II. *Enforcement Dates*

At the direction of the court, the parties submitted proposed schedules for implementation of each of the four strategies. A table summarizing the proposals which resulted, together with the original dates found in New York's SIP, is attached to this opinion as Appendix B. Before discussing the proposed schedules for each strategy separately, several general comments are in order. The parties' proposed schedules diverge most with regard to the Gasoline Vapor Recovery Strategy, where the two proposed dates for final compliance are nine months apart. This strategy, as discussed below, poses unique problems. The parties' schedules are closer as to the three other strategies. The proposed schedules begin at similar points but then gradually diverge because NRDC proposes shorter intervals between each stage of compliance—from completion of studies to adoption of regulations to achievement of implementation. NRDC argues that although the schedules should be based on the same time-intervals set forth in the SIP, each interval should be slightly contracted, in order to accelerate final compliance and make up for past delays. The State, in contrast, argues that its proposed schedules represent the "absolute minimum amount of time" in which the strategies can be implemented, based on its experience as to the time necessary to promulgate a state regulation.[5] Finally, NRDC's proposed schedules set dates for "full" or "final" compliance with the strategies, while the State's proposals only set dates for the "beginning" of implementation.

### A. *Gasoline Vapor Recovery Strategy*

The goal of this strategy is to reduce the ozone-level in the air in the New York City metropolitan area by capturing the gasoline vapors displaced from automobile fuel tanks during refueling at gasoline stations. This strategy, which has already been implemented in Washington D.C. and California, requires gasoline service stations to

---

**5.** Affidavit of Harry H. Hovey, Jr. in Support of State Defendants' Proposed Schedule at ¶ 5

(June 10, 1987) ("Hovey Schedule Affidavit").

install a device on gas pump nozzles which controls the gasoline fumes and returns them through a hose and piping to the service station's underground tank. In the New York SIP, the State committed itself to 1) adopting the necessary regulations for a gasoline vapor control program by June 1985; 2) ensuring that the regulations became effective by January 1986; and 3) implementing the vapor recovery program for large service stations by December 1986 and for small service stations by December 1987.[6]

However, although the SIP called for full implementation of the vapor recovery strategy by December 1987, the State did not propose regulations to implement the strategy until October 1986—and in that proposal the compliance dates were extended until January 1988 and January 1989.[7] Thereafter, in an affidavit submitted to the court on April 15, 1987, the State represented that the proposed vapor recovery regulations, which were then about to be presented for approval to the New York State Environmental Board, would not be implemented until July 1988 for large service stations and July 1989 for mid-size stations.[8] The only explanation on the record for this additional six month delay was that it was necessary "to provide needed time for DEC and other state agencies ... to coordinate approval and implementation of the Stage II program, and to enable DEC to procure the necessary staffing and resources needed to implement the program."[9] Finally, on May 7, 1987, the State Environmental Board approved the vapor recovery regulation, but further extended the compliance dates for existing service stations until April 1, 1989 for large sta-

tions, and until April 1, 1990 for mid-size stations.[10] The Board issued no formal findings to explain or support its actions in extending the time for compliance another nine months,[11] and thus delaying full compliance for more than two years beyond the original dates set in the New York SIP.

NRDC requests that this court set compliance dates for the vapor control strategy of July 1, 1988 for large stations and July 1, 1989 for mid-size stations, the dates which the State itself suggested just four months ago. The State, however, urges adherence to the dates most recently set by the State Environmental Board. They argue that the April 1989 and 1990 dates are not unreasonable because implementation of vapor recovery systems will force service station owners to make expensive repairs to their stations. Additionally, they suggest that even compliance dates set by order of this court in a federal action under the Clean Air Act must be promulgated, submitted for public comment, and submitted to the State Environmental Board for approval. Such a court-ordered repromulgation, it is argued, would "make a sham out of state rulemaking procedures"[12] and might create controversy which would pressure the State to ask EPA to withdraw the Stage II strategy from the SIP.

The arguments made by the State are not persuasive. Only four months ago, the State itself proposed the very compliance dates now being urged by NRDC. The State has presented no record justifying the State Environmental Board's nine month extension of the implementation dates nor suggested any change in the

6. Complaint, Exhibit A, New York SIP at A–21–22.

7. Plaintiffs' Memorandum of Law in Support of their Proposed Schedule, Exhibit D, Notice of Proposed Rule Making (Oct. 8, 1986).

8. Large service stations are defined as those with an annual output of 500,000 gallons or more, and mid-size stations are defined as those with an annual output of 250,000 to 500,000 gallons a year. See Affidavit of Harry H. Hovey, Jr., in Opposition to Plaintiff's Motion for Partial Summary Judgment on Liability of State

Defendants at ¶ 17 and Exhibit F (April 16, 1987) ("Hovey Partial Summary Judgment Affidavit").

9. Hovey Affidavit at Exhibit 3, final unnumbered page.

10. Hovey Schedule Affidavit at Exhibit 3, Express Terms, final unnumbered page.

11. See Letter to Court of David R. Wooley at p. 2 (August 20, 1987).

12. Id. at p. 851.

factual situation which would support such an extension. Accordingly, the compliance dates for the vapor control strategy will be July 1988 and July 1989.

Although implementation of the strategy within this time frame may impose an extra burden on some service stations and for the State defendants, *Friends of the Earth* makes clear that while "enforcement of the air quality plan might well cause inconvenience and expense to both governmental and private parties ...[,] Congress [has] decreed that whatever time and money otherwise might be saved should not be gained at the expense of the lungs and health of the community's citizens." 535 F.2d at 179.

Furthermore, the only evidence submitted on the issue of technical or financial burden, an affidavit submitted on behalf of NRDC by James J. Morgester, the Chief of the Division of Compliance of the California Air Resources Board, indicates that installation of the vapor recovery system requires only two changes to a service station's gasoline dispensing equipment: the installation of a new nozzle and hosing at the gasoline pump and the installation of a new pipe that connects the pump to its underground tank.[13] The latter requires digging a trench so that the pipe can be connected to the already existing tank.[14] In California, experience has shown that complete installation of the vapor control system at a station, including inspection, takes two to three weeks and costs from $10,000 to $20,000.[15] Morgester concludes that the program, which is now reducing VOC emissions by approximately 135 tons per day in California, is "one of [California's] most cost-effective programs for reducing ozone-related air pollution."[16] Hence, as a factual matter, it appears that complete implementation of New York's vapor control strategy by July 1, 1989 is feasible and would not be unreasonably time-consuming or burdensome, especially since small gasoline stations with an annual output of less than 250,000 gallons are exempted from the program.[17]

The State defendants' arguments based on the alleged difficulty of submitting new compliance dates through the rule-making process for approval by the State Environmental Board are also without merit. No satisfactory explanation has been provided why this court cannot simply order the DEC and the State Board, which is part of the DEC,[18] to modify the already promulgated gasoline vapor recovery regulation by substituting new implementation dates. As discussed above, under the Clean Air Act, this court has the authority and indeed the responsibility to enforce the provisions of New York's SIP. It cannot be argued— and indeed it has not been—that such an order implementing the vapor control strategy as promptly as possible would impinge on an area of state sovereignty. *See Friends of the Earth v. Carey*, 552 F.2d 25, 39 (2d Cir.) ("In the context of the enforcement of the Plan through citizen suit, the choices and procedures are the products of State choice, not of federal policy, and may legitimately be enforced by the district court."), *cert. denied sub nom. Beame v. Friends of the Earth*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977).

13. Supplemental Affidavit of James J. Morgester at ¶¶ 5 (August 26, 1987).

14. *Id.* at ¶ 6.

15. *Id.* at ¶¶ 6–7.

16. *Id.* at ¶ 8.

17. Hovey Affidavit at Exhibit 3, Express Terms, amended § 230.2(c).

18. *See* N.Y.Envtl.Conserv.Law § 5–0101 (McKinney 1984) (State Environmental Board is "continued within the [DEC].") The State itself acknowledges that "[e]ssentially the Board is contained within the Department and jurisdiction over the Department necessarily runs to the Board." Memorandum of Law in Support of the State's Proposed Order and Schedule at p. 19 n. 8. (June 10, 1987) ("State Schedule Memorandum"). NRDC has moved to join the State Board as a defendant in this action to avoid any possible dispute over the question whether an order directed to the State defendants can bind the State Environmental Board as well. Based on the State's representations, however, it is not necessary to join the Board as a defendant at this time. Accordingly, NRDC's motion to join the Board as a party is denied without prejudice. The motion may be renewed later if necessary to effect full relief.

Second, deference to the rule-making process or to the technical expertise of the DEC or the State Environmental Board would be inappropriate here, because it would be inconsistent with the goals and mandates of the Clean Air Act. *Cf. Securities Industry Association v. Board of Governors of the Federal Reserve System,* 468 U.S. 137, 143, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984) (reviewing court must reject administrative constructions of a statute inconsistent with statutory mandate). Finally, the State's argument that if new implementation dates are set they may be pressured against their better judgment to petition the EPA to remove the strategy from the SIP is speculative. The SIP must be enforced as it stands now.

In sum, the State defendants must achieve implementation of the strategy for large service stations by July 1988, and for mid-size stations by July 1989.

## B. *Architectural Coatings Strategy*

■ This strategy aims to cut VOC emissions through controls on the solvent content in paints and other architectural coatings, requiring manufacturers to reformulate the chemical content of their paints. Stating that "[t]he painting of interior and exterior of new and older buildings is a significant contributor to the VOC emissions in the Metropolitan Area,"[19] the State committed itself in the SIP to completing a study of architectural coating control alternatives by January 1985, adopting regulations by January 1986, with full compliance by December 1987.[20] Yet today, over a year after the strategy was to have been implemented, not even the first step towards implementation—completion of the study—has occurred.[21]

NRDC's and the State's proposed schedules for this strategy differ significantly in only two respects. *See* Appendix B, Table II. First, although both schedules begin with the assumption that the necessary study, which has been undertaken by the State of New Jersey, will be completed by September 30, 1987, NRDC's schedule proposes shorter intervals between the stages of compliance following the completion of the study than does the State's. As a result, NRDC calls for final filing of the approved regulation with the New York Secretary of State by July 1, 1988, and the State defendants' schedule calls for filing by August 15, 1988. Although NRDC may be correct in arguing that the regulation could possibly be filed slightly sooner than the State proposes, the forty-five day disparity is not significant enough to warrant action by the court. Accordingly, the State defendants' schedule is adopted with regard to the stages of compliance from completion of the New Jersey study to filing of the regulations.

Second, NRDC's schedule sets dates for the beginning of compliance with the regulation and for full compliance, while the State defendants' schedule ends with the filing of the regulation. The State defendants argue that they are awaiting the completion of the New Jersey study to determine the appropriate method to achieve reformulation of the various paints, and that until the study is received, "to set final dates for full implementation ... would be purely speculative."[22] The scheduling order for this strategy must incorporate final dates. The Clean Air Act specifies that each SIP shall include "emission limitations, schedules, and *timetables for compliance with such limitations,*" 42 U.S.C. § 7410(a)(2)(B) (1982) (emphasis added). For this reason, the New York SIP itself includes regulation implementation and final compliance dates. Moreover, human— and bureaucratic—nature is such that com-

---

19. Complaint at Exhibit A, New York SIP at A–28.

20. *Id.* at A–28–29.

21. The DEC has explained that the states of New York and New Jersey, with the EPA's approval, agreed to divide responsibility for the study. New York agreed to undertake the first phase of the study and has already completed that phase. New Jersey agreed to undertake the second phase of the study, but has not yet completed it. Hovey Schedule Affidavit, Exhibit 4, Letter of Henry G. Williams.

22. State Schedule Memorandum at p. 8 (June 10, 1987).

pletion of the strategy is much more likely to be attained if specific target dates are established.[23]

NRDC's schedule calls for compliance to begin by January 1, 1989, with full compliance to be achieved by January 1, 1990. This would give the State almost five months after the filing of the regulation to begin implementation and seventeen months to achieve final compliance. The EPA has also stated that these final dates for this strategy would be "reasonable and feasible." [24] NRDC's proposed final compliance dates are adopted.

■ The final issue to be determined with regard to this architectural coating strategy concerns completion of the study currently being prepared by the State of New Jersey. Timely completion of the study is crucial, because the other steps toward implementation depend on the study's results. The State defendants have received assurances from the State of New Jersey Department of Environmental Protection that the study will be completed and reviewed by September 30, 1987.[25] However, implementation of the New York SIP is the State defendants' responsibility, and they must take action themselves if New Jersey does not complete the study on time. In response to the court's request at oral argument, the State defendants have submitted the following plan of action if the New Jersey study is not submitted on time: 1) if by September 1, 1987, it appears that the draft report will not be available for review within a reasonable period of time, DEC staff will complete the study themselves if possible, or, if DEC cannot com-

plete it, DEC will hire a consultant to do so; 2) if the New Jersey draft report is received before November 1, 1987, the DEC would end the New York study and proceed with the regulatory process; 3) if the New Jersey final report is delayed more than one week from the expected receipt date, DEC will start preparation of the regulations using materials from the draft report; and 4) the State defendants will notify the court and the parties of the report's status by October 1, 1987.[26] This contingency plan—to which NRDC has not objected—will be adopted in the scheduling order.

## C. *Consumer and Commercial Solvents Strategy*

■ This strategy is intended to reduce, by market regulation, the VOC emissions of ozone produced by ten categories of consumer and commercial solvents including aerosol products, polishes, waxes and other household solvents. Under the SIP, a study on this strategy was to have been completed by July 1985, a regulation adopted by July 1986, with implementation of the strategy by December 1987.[27]

The State defendants now propose to implement this strategy in two phases: the first would regulate those solvents which most significantly affect air quality, and the second would regulate the remaining categories of solvents listed in the SIP.[28] The EPA is currently conducting a study, expected to be completed by October 1, 1987, which will identify and examine the first priority solvents.[29]

---

23. At oral argument on these scheduling issues, the parties concurred that the phrases "full" or "final" compliance or implementation were interchangeable terms which refer to full discharge of the State's obligations, not to total compliance by all the private parties affected. *See* Transcript of Conference, July 7, 1987 at pp. 21–22.

24. Letter to Court of Richard W. Mark at p. 1 (filed July 8, 1987) ("Mark Letter").

25. Hovey Schedule Affidavit at Exhibit 5, Letter of Richard T. Dewling to Commissioner Henry G. Williams, June 8, 1987.

26. Letter to Court of Harry H. Hovey (July 9, 1987) ("Hovey Letter").

27. Complaint, Exhibit A, New York SIP at A–30–31.

28. NRDC states that it has no objection to the division of this strategy into two phases, but it requests an order that the first phase cover at least three of the ten product categories included in the New York SIP. A ruling on this issue will be deferred until the EPA submits its study identifying the most damaging solvents.

29. Letter to Henry G. Williams from Christopher J. Daggett, appended to Federal Defendants' Memorandum in Response to Plaintiffs' Memorandum of Law in Support of their Proposed Schedule.

The State's proposed schedule for this strategy differs from NRDC's in the same manner as discussed above with regard to the architectural coating strategy. First, NRDC proposes shorter intervals between some of the steps toward implementation than do the State defendants: NRDC's schedule calls for proposed regulations for the second phase of the strategy by May 1988, with adoption of the regulations by October 1988, whereas the State's schedules call for proposed second phase regulations by June 15, 1988, with adoption of those regulations by January 15, 1989. Again, as above, the disparity between the proposed dates is not significant enough to warrant court modification of the State's proposed schedule, and accordingly those proposed dates are adopted.

Second, the State's suggested schedule does not set dates for achieving implementation of the strategy. As discussed above, the Clean Air Act clearly calls for the establishment of implementation dates. NRDC's proposed schedule suggests an interval of nine months between the adoption of regulations and implementation for the first phase, and an interval of a year between adoption of regulations and implementation for the second phase. EPA states that an interval of a year between adoption and implementation would be reasonable for both phases. Accordingly, it is reasonable to require the State to achieve implementation for both phases within a year after adoption of the regulations: implementation of the first phase of the strategy by August 1, 1989 and of the second phase by January 1, 1990.

Finally, the State defendants have agreed that if the EPA study on which the first phase of this strategy depends is not completed within a week after the date on which it is expected—October 1, 1987, the DEC will immediately take steps to hire a consultant to conduct the study.[30] With regard to the second phase of this strategy, EPA has pointed out that "it is the State's responsibility to carry out the study for a second, additional group of solvent catego-

ries."[31] The State defendants must arrange to perform this study, if it is necessary, within the time framework which has been established for this strategy.

## D. *Auto Refinishing Strategy*

This strategy aims to reduce VOC emissions by regulating refinishing operations in auto body shops. NRDC's and the State's proposed schedules for this strategy differ only in that the State's fails to set a date for full compliance. For the reasons discussed above, a date for full compliance will be set. Full compliance must be achieved by for January 1, 1989, a year after the commencement of implementation of the regulation, which is the interval suggested by both NRDC and EPA.

## III. *Other Requests For Relief*

NRDC has requested inclusion in the scheduling order of 1) a liquidated penalties clause in the event of noncompliance; 2) a provision that the State defendants must revise their SIP under certain circumstances; and 3) a requirement that the State defendants file quarterly progress reports.

■ NRDC asks that the scheduling order include a provision that the court will entertain a motion to assess State defendants' liquidated penalties of up to $2500 a day in the event of noncompliance with the scheduling order. Of course NRDC is free to move for an order of contempt and sanctions if the State defendants do not comply with the timetables established in this action. However, it is presumed that the State defendants will proceed in good faith to comply with the scheduling order, and a specific liquidated penalties provision would be inappropriate at this time, because such a penalty, if set, should be measured in relation to the circumstances existing at the time of violation.

NRDC next requests an order that at the time of publication of any proposed rule implementing one of the four strategies at

---

**30.** Hovey Letter at p. 2.

**31.** Mark Letter at p. 2.

858

issue here, the State submit data indicating the ozone emissions reductions expected from full compliance with the regulatory proposal. If the data indicates that the actual emissions reductions will be less than claimed in the SIP for the strategy, then NRDC requests that the State be required to submit a revision to the SIP to commit to additional measures that will achieve equivalent emissions reductions. EPA—but not the State—objects to inclusion of this provision. EPA argues that it is unnecessary because the State is already required to submit regulations implementing control measures to EPA for approval. Moreover, it is contended that such an order would be beyond the court's jurisdiction because the Clean Air Act only empowers the court to enforce the provisions included in an EPA-approved SIP and does not give the court jurisdiction to oversee the creation or revision of a SIP.

█ Without reaching the issue whether jurisdiction to issue such an order exists, an automatic-revision requirement will not be imposed on the State defendants at this time. If, when the strategy regulations are proposed, it appears that they will be insufficient to meet the ozone reduction goals set in the SIP, it will be the responsibility of the State defendants and EPA in the first instance to take action to revise the SIP. If the State and EPA fail to take timely action, NRDC may move for appropriate relief.

Finally, NRDC requests a requirement that State defendants file quarterly progress reports to inform the court and the parties of the State's progress in meeting the provisions of the scheduling order. This provision, which is not opposed, is adopted.

## IV. *Conclusion*

In summary, NRDC's motion for partial summary judgment against the State defendants is granted. A scheduling order will be entered with the following dates:

### A. Gasoline Vapor Recovery Strategy
Final compliance by large
service stations ................ July 1, 1988

Final compliance by midsize
service stations ................ July 1, 1989

### B. Architectural Coatings
Completion of study ...... September 30, 1987
Proposed regulation ......... February 1, 1988
Public hearings .............. March 15, 1988
Recommend decision to
Commissioner ................ May 15, 1988
Final regulations to Environmental Board ............. June 15, 1988
File with State
Secretary of State ........ August 15, 1988
Compliance begins .......... January 1, 1989
Full compliance ............. January 1, 1990

### C. Consumer and Commercial Solvents
Phase I
Complete study .............. October 1, 1987
Propose regulations ......... February 1, 1988
Public hearings .............. March 15, 1988
Decision for Commissioner ...... May 15, 1988
Final regulations to Environmental Board ............. June 15, 1988
Adopt regulations ........... August 15, 1988
Achieve implementation ....... August 1, 1989

Phase II
Proposed regulations .......... June 15, 1988
Public hearings .............. August 15, 1988
Decision for Commissioner ...October 15, 1988
Final regulations to Environmental Board ..........December 1, 1988
Adopt regulations ........... January 15, 1989
Achieve implementation ...... January 1, 1990

### D. Auto Refinishing Controls
Complete study .............. August 1, 1987
Commence implementation ... January 1, 1988
Full Compliance ............. January 1, 1989

Submit proposed order upon notice.

## APPENDIX A: NEW YORK SIP TIMETABLES
### AND STATUS OF STATE ACTION

| PLAN STRATEGY | TIME FOR IMPLEMENTATION | | | STATUS |
|---|---|---|---|---|
| | Complete Study | Final Regulations | Implemen- tation | |
| Stage II vapor recovery | No study required | June 1985 | Achieve for large and mid-size stations by Jan. 1987 | Regulation setting implemen- tation dates of April 1, 1989 for mid-size stations and April 1, 1990 for large sta- tions effective June 27, 1987; no implementation. |
| Automotive body shops | January 1985 | January 1986 | Begin July 1986 | "Draft study" submitted Feb. 4, 1987; no regulations; no implementation. |
| Architectur- al coatings | January 1985 | January 1986 | Begin July 1986 | First phase of study submit- ted to EPA Feb. 12, 1987; state awaits completion by New Jersey of second phase; no regulations; no implemen- tation. |
| Consumer and com- mercial products | July 1985 | July 1986 (regulations or legisla- tion) | Achieve by December 1987 | State awaits completion by EPA of study; no regula- tions; no implementation. |

## APPENDIX B
### TABLE I

| Action | SIP | NRDC's Proposal | State's Proposal as of 4/15/87 | State's Current Proposed Schedule |
|---|---|---|---|---|
| Proposed Regulation | Feb. 1985 | --- | already proposed | already effective |
| Final Compliance: | | | | |
| Large stations | Dec. 1986 | July 1, 1988 | July 1, 1988 | Apr. 1, 1989 |
| Mid-size stations | Dec. 1987 | July 1, 1989 | July 1, 1989 | Apr. 1, 1990 |

## TABLE II

### ARCHITECTURAL COATINGS STRATEGY: SIP SCHEDULE AND PROPOSED TIMETABLES

| Action | SIP | NRDC Proposal | State Defendants' Proposal |
|---|---|---|---|
| Completion of study | Jan. 1985 | Sept. 30, 1987 | Sept. 30, 1987 |
| Proposed regulation | June 1985 | Jan. 1, 1988 | Feb. 1, 1988 |
| Public hearings | | Mar. 15, 1988 | March 15, 1988 |
| Recommended decision to Commissioner | | May 15, 1988 | May 15, 1988 |
| Final regs. to Environmental Board | | June 1, 1988 | June 15, 1988 |
| File with Secretary of State | Jan. 1986 | July 1, 1988 | Aug. 15, 1988 |
| Compliance begins | July 1986 | Jan. 1, 1989 | --- |
| Full compliance | Dec. 1987 | Jan. 1, 1990 | --- |

## TABLE III

### SIP TIMETABLE AND PROPOSED SCHEDULES FOR THE CONSUMER AND COMMERCIAL SOLVENTS STRATEGY

| | SIP | NRDC | STATE |
|---|---|---|---|
| Complete study | July '85 | Oct. 1, '87 | Oct. 1, '87 |
| Adopt regs. | July '86 | | |
| Achieve implementation | Dec. '87 | Phase I | Phase II |
| Propose regs. | | Mar. '88 | Feb. 1, '88 |
| Public hearings | | --- | Mar. 15, '88 |
| Decision for Commissioner | | --- | May 15, '88 |
| Final regs. to Environmental Board | | --- | June 15, '88 |
| Adopt regs. | | Aug. '88 | Aug. 15, '88 |
| Achieve implementation | | May '89 | --- |
| | | Phase I | Phase II |
| Propose regs. | | May '88 | June 15, '88 |
| Public hearings | | --- | Aug. 15, '88 |
| Decision for Commissioner | | --- | Oct. 15, '88 |
| Final regs. to Environmental Board | | --- | Dec. 1, '88 |
| Adopt regs. | | Oct. '88 | Jan. 15, '89 |
| Achieve implementation | | Oct. '89 | --- |

■■■■■■■■■■■■■■■

**TABLE IV**

**SIP TIMETABLE AND PROPOSED SCHEDULES
FOR AUTO REFINISHING CONTROLS**

|                        | SIP       | NRDC      | STATE        |
|------------------------|-----------|-----------|--------------|
| Complete study         | Jan. '85  | ---       | Aug. 1, '87  |
| Propose regs.          | June '85  | ---       | ---          |
| Promulgate regs.       | Jan. '86  | ---       | ---          |
| Commence implementation| July '86  | Dec. '87  | Jan. 1, '88  |
| Full compliance        | Dec. '87  | Dec. '88  | ---          |