AMERICAN LUNG ASSOCIATION,
et al., Plaintiffs,

v.

Thomas H. KEAN, Governor of New
Jersey, et al., Defendants.

Civ. A. No. 87–288.

United States District Court,
D. New Jersey.

June 29, 1994.

Rutgers Environmental Law Clinic, New-
ark, NJ, by Edward Lloyd, for plaintiffs.

Deborah T. Poritz, Atty. Gen. of N.J.,
Trenton, NJ, by Catherine A. Tormey for
defendants.

## OPINION

HAROLD A. ACKERMAN, District
Judge.

This matter comes before the court on the
motion of plaintiffs to enforce the scheduling
order entered by this court on November 19,
1987 ("Scheduling Order" or "Order") and on
the cross-motion of defendants New Jersey
Department of Environmental Protection and
Energy ("DEPE") and certain state officials
(collectively, "State defendants") to amend
the Scheduling Order.

For the following reasons, plaintiffs' mo-
tion is granted and State defendants' cross-
motion is denied.

## I. Factual and Procedural Background

As I have fully recounted the background of this case in several prior opinions, I will only briefly summarize the events leading up to the present set of motions. *See American Lung Ass'n v. Kean,* 670 F.Supp. 1285, 1286–1289 (D.N.J.1987) (*"American Lung I"*), *aff'd,* 871 F.2d 319 (3rd Cir.1989); *American Lung Ass'n v. Kean,* 26 ERC 1865, 1987 WL 31764 (D.N.J. Nov. 19, 1987) (*"American Lung II"*); *American Lung Ass'n v. Kean,* Civil Act. No. 87–288, slip op. at 2–4 (D.N.J. Apr. 14, 1989) (*"American Lung III"*); *American Lung Ass'n v. Kean,* Civ. Act. No. 87–288 (D.N.J. April 19, 1991) (*"American Lung IV"*).

Pursuant to the Clean Air Act of 1970 (the "Act"), the United States Environmental Protection Agency ("EPA") promulgates National Ambient Air Quality Standards ("NAAQS") for certain air pollutants, including ozone. 42 U.S.C. § 7409. Each state is required to develop a state implementation plan ("SIP") which sets forth the strategies the state will employ to bring the level of air pollutants into compliance with the NAAQS. Once a SIP is approved by the EPA, the state is bound as a matter of federal law to comply with its provisions. *See American Lung,* 871 F.2d at 322.

In 1977, Congress amended the Act to extend the deadlines for attainment of certain NAAQS. The 1977 amendments provided that states not yet in attainment must attain compliance with most NAAQS "as expeditiously as practicable, but ... not later than December 31, 1982." 42 U.S.C. § 7502(a)(1). States with severe ozone problems, such as New Jersey, could receive an additional extension to December 31, 1987 for attainment of ozone NAAQS by complying with certain requirements. 42 U.S.C. § 7502(a)(2). These included the filing of revised SIPs containing stringent measures for attainment of the NAAQS. 42 U.S.C. § 7502(c).

In 1983, New Jersey submitted a revised SIP which the EPA approved with minor changes. *See* 48 Fed.Reg. 51,472 and 51,479 (Nov. 9, 1983). The SIP contains nine strate-

gies for controlling levels of ozone through the reduction of chemical substances known as "volatile organic substances" ("VOS") or "volatile organic compounds" ("VOC"), which are emitted into the air.

On January 27, 1987, plaintiffs American Lung Association and other non-profit groups commenced this citizen suit pursuant to Section 304 of the Act, 42 U.S.C. § 7604, to compel defendants to comply with the terms of the SIP. On September 24, 1987, I granted plaintiffs' motion for partial summary judgment, holding that the state had failed to implement seven of the nine strategies prescribed in the SIP to bring it into compliance with the ozone NAAQS. *See American Lung I,* 670 F.Supp. 1285. One of these strategies was the promulgation and enforcement of regulations pertaining to the control of ozone vapor emissions from solvent-based consumer and commercial products.

After giving the parties an opportunity to submit proposed timetables for compliance with the SIP, on November 19, 1987, this court ordered the implementation of the seven ozone-reduction strategies in accordance with the schedule proposed by the state. *See American Lung II,* 26 ERC at 1872. With respect to the regulation of solvent-based consumer and commercial products, the Scheduling Order contains the following timetable:

| | |
|---|---|
| Submit proposed rules to OAL[1] | 7/22/88 |
| Publish in the New Jersey Register | 8/29/88 |
| Public Hearing | 9/30/88 |
| Adopt and submit to OAL | 12/30/88 |
| Commence compliance (effective date of rule) | 2/28/89 |
| Require full compliance | 2/28/90 |

*Id.* at 1875.

In accordance with this schedule, DEPE submitted a proposed regulation to the OAL, N.J.A.C. 7:27–23, on July 22, 1988, which was published in the August 15, 1988 *New Jersey Register. See* 20 N.J.R. 2002–2007. The proposed rule, entitled "Volatile Organic Substances in Consumer Products," addressed several consumer products, including

---

1. The New Jersey Office of Administrative Law.

air fresheners and consumer insecticides. The rule required that these products reduce their content of VOS to 50% by weight by February 28, 1990, to 25% by February 28, 1992, and to 5% by February 28, 1994. A public hearing on the proposed rule was held on September 22, 1988, during which testimony and written comments were accepted. Certain commentators criticized the adequacy of DEPE's scientific evidence and knowledge and argued that DEPE had an insufficient basis for establishing VOS limits. *See* 21 N.J.R. at 472.

On January 26, 1989, N.J.A.C. 7:27–23 was adopted "with technical and substantive changes from the proposal." *In re the Adoption of Regulations Concerning Volatile Organic Substances in Consumer Products,* 239 N.J.Super. 407, 409, 571 A.2d 971, 972 (App. Div.1990); *see* 21 N.J.R. 462–483. Specifically, DEPE deferred adoption of any regulations pertaining to consumer insecticides pending further study. The rule retained the requirement that the VOS content of air fresheners be limited to 50% by February 28, 1990. However, DEPE deferred adoption of the proposals which would require further reductions to 25% and 5% pending further study. Finally, DEPE clarified that disinfectant air fresheners were not intended to be governed by the new rule. "As a result of these changes, only non-disinfectant air fresheners with more than 50% VOS [were] subject to the regulation." *In re the Adoption,* at 410, 571 A.2d at 973. This meant that "[o]nly four specific items out of the entire consumer products market [were] thus affected by the rule." *Id.* According to the State defendants, the substantive changes to the rule were made because of "DEPE's discomfort with the scientific basis for its VOC content standards for insecticides and the more restrictive standards for air fresheners." Def. Br. at 9–10.

Upon a challenge by a manufacturer of air fresheners, the New Jersey Superior Court, Appellate Division, subsequently invalidated the rule on procedural grounds.[2] *See In re the Adoption,* 239 N.J.Super. 407, 571 A.2d 971. Specifically, the Appellate Division concluded that the differences between the proposed rule and the adopted rule were substantial and therefore warranted republication and a new hearing pursuant to the provisions of the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B–1, *et seq.* Accordingly, the Appellate Division remanded the matter to DEPE "for action consonant with the A.P.A.," including republication and a new hearing. *In re the Adoption,* at 414, 571 A.2d at 975.

Since the Appellate Division's ruling in February 1990, DEPE has not attempted to repromulgate this or any other regulation for reducing ozone vapor emissions from solvent-based consumer and commercial products. In addition, the State defendants have frequently failed to submit quarterly status reports as required by the Scheduling Order. Specifically, between July 1990 and the present, the State defendants have submitted only one status report, dated August 31, 1993.

On July 26, 1993, plaintiffs filed the instant motion seeking enforcement of the Scheduling Order. Plaintiffs seek a finding that the State defendants are in· violation of this court's Order and the Act because of their failure to implement a consumer and commercial products strategy and to timely file status reports. In addition, plaintiffs ask this court to establish a new schedule for the implementation of the consumer and commercial product strategy in order to ensure New Jersey's compliance with its SIP. Plaintiffs have proposed a timetable under which full compliance would be attained by April 30, 1996.

On September 20, 1993, the State defendants filed a cross-motion seeking to amend the Scheduling Order. At the request of the parties, I deferred consideration of these motions in order to give the parties an opportunity to amicably resolve this matter. On June 1, 1994, the parties informed the court that efforts at settling the matter had failed. The parties have since filed updated submissions with the court and the matter is now ripe for resolution. I note that I have previously retained jurisdiction over the imple-

---

**2.** The Appellate Division's ruling did not affect those portions of the rule relating to other strate-

gies for ozone reduction not at issue on these motions.

mentation of my Order, *see American Lung,* 871 F.2d at 329 (citing Scheduling Order at 6), so that these motions are properly before me.

## II. Plaintiffs' Motion to Enforce the Scheduling Order

The State defendants concede that the consumer and commercial products strategy has, to this date, not been implemented. The State defendants also concede that they have been remiss in filing status reports as required under the Scheduling Order. Accordingly, it is beyond dispute that the State defendants have not complied with the Order. The reasons for the noncompliance is irrelevant for purposes of liability. *See Natural Resources Defense Council, Inc. v. New York State Department of Environmental Conservation,* 668 F.Supp. 848, 852 (S.D.N.Y. 1987). I therefore find the State defendants to be in violation of this court's Scheduling Order.

Accordingly, I must enter an appropriate order for enforcement of the Order. *See Friends of the Earth v. Carey,* 535 F.2d 165, 173 (2d Cir.1976) ("the district court is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement"). As the relevant dates set forth in the Order have long since passed, I am once again confronted with the task of revising the compliance schedule, "consonant with the purpose of the Clean Air Act, to ensure that New Jersey [come] into compliance with the ozone NAAQS 'as expeditiously as practicable.' 42 U.S.C. § 7502(a)." *American Lung,* 871 F.2d at 327. As noted above, plaintiffs have proposed a revised timetable. Defendants, however, have moved for a much greater modification of the Scheduling Order and it is to this motion that I now turn.

## III. State Defendants' Motion to Amend the Scheduling Order

■ Federal Rule of Civil Procedure 60(b)(5) provides:

> On motion and upon such terms as are just, the court may relieve a party or his

legal representative from a final judgment, order, or proceeding for the following reasons: .... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or *it is no longer equitable that the judgment should have prospective application* ....

*Id.* (emphasis added). Pursuant to this provision, relief may be granted only "upon a showing of exceptional circumstances." *Philadelphia Welfare Rights Organization v. Shapp,* 602 F.2d 1114, 1119 (3rd Cir.1979), *cert. denied sub nom. Thornburgh v. Philadelphia Welfare Rights Organization,* 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980); *accord Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3rd Cir.1977). Put differently, the court should consider "whether in the present circumstances and the state of the law, the decree works extreme and unnecessary hardships upon the defendants." *Securities & Exchange Commission v. Warren,* 583 F.2d 115, 121 (3rd Cir.1978); *see also Moolenaar v. Government of the Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987) ("Rule 60(b) does not confer upon the district courts a standardless residual of discretionary power to set aside judgments.... The remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it.") (citations omitted).[3]

■ State defendants argue that the Scheduling Order should be amended so as to enable New Jersey to implement a consumer products program "keyed to USEPA's national program development." Def. Br. at 18. The crux of the State defendants' argument is the passage of the Clean Air Act Amendments of 1990 ("CAAA"), which defendants claim have substantially changed the "consumer product 'playing field'" since this court entered the Scheduling Order. Def. Br. at 19. I will therefore first give a brief synopsis of the relevant provisions of the CAAA.

As with the 1977 amendments to the Act, the CAAA amended the Act to provide states additional time to achieve compliance with

---

**3.** I note that the State defendants have not cited Rule 60(b) or any other authority in support of their argument that they are entitled to a modification of the Scheduling Order.

the NAAQS for ozone. *See* 42 U.S.C. § 7511. For a state classified as a "Severe Area" with respect to ozone levels, such as New Jersey, the new attainment date "shall be as expeditiously as practicable but not later than" November 15, 2005. 42 U.S.C. § 7511(a)(1). The CAAA mandates extensive remedial action on the part of the states in order to reduce ozone emissions. *See* 42 U.S.C. § 7511a.

The 1990 Amendments also contain specific provisions relating to ozone emissions from consumer and commercial products. Pursuant to 42 U.S.C. § 7511b(e)(2)(A), the EPA must conduct a study of VOS emissions from consumer and commercial products. The study must be completed, and a report must be submitted to Congress, by November 15, 1993. *Id.* The CAAA also provides for federal regulation of ozone emissions. *See* 42 U.S.C. § 7511b(e)(3). Specifically, upon completion of the report, the EPA must list those categories of consumer and commercial products that it has determined account for at least 80% of VOS emissions from such products in areas that violate ozone NAAQS. The EPA must then divide the list into four prioritized groups for regulation. Every two years after promulgating this list, the EPA must regulate one group of product categories until all four groups are regulated. 42 U.S.C. § 7511b(e)(3)(A). In lieu of regulations, however, the EPA may issue "control technique guidelines" if the EPA determines that such guidelines will be "substantially as effective" as regulations in reducing VOS emissions. 42 U.S.C. § 7511b(e)(3)(C).

Based on these regulations, DEPE claims that the CAAA mandates "a significant new leadership role" for the EPA in the regulation of consumer and commercial products. Def. Br. at 11. Further, DEPE claims that it lacks the requisite expertise and scientific knowledge in the consumer product area. DEPE therefore argues that the most rational, effective, and economical course of action is to follow the national lead which it claims Congress established for the EPA. In following the EPA's lead, DEPE seeks to attain compliance with the ozone NAAQS by the November 15, 2005 deadline.

DEPE, in essence, seeks to be relieved of its obligations under the SIP and the Scheduling Order and to defer any regulatory action until after the EPA has acted. This is clearly impermissible. As an initial matter, the CAAA contains a savings clause which provides for the continuing validity of existing SIPs. 42 U.S.C. § 7410(n)(1) provides:

> Any provision of any applicable implementation plan that was approved or promulgated by the [EPA] Administrator pursuant to this section as in effect before November 15, 1990 shall remain in effect as part of such applicable implementation plan, except to the extent that a revision to such provision is approved or promulgated by the Administrator pursuant to this chapter.

Further, the CAAA contains a general savings clause that provides in pertinent part as follows:

> No control requirement in effect, or required to be adopted by an order, settlement agreement, or plan in effect before November 15, 1990 in any area which is a nonattainment area for any air pollutant may be modified after November 15, 1990 in any manner unless the modification insures equivalent or greater emission reductions of such air pollutant.

42 U.S.C. § 7515.

Accordingly, the CAAA does not, in any way, eliminate the State defendants' obligations under the SIP and this court's Scheduling Order. Rather, existing SIPs and related orders are to remain in effect until or unless equivalent or more restrictive standards are adopted. State defendants simply cannot use the EPA's purported new national role under the CAAA as a means of avoiding their responsibilities under the Scheduling Order.

The CAAA, moreover, expressly contemplates that states will implement their own regulations for reducing ozone emissions from consumer and commercial products. *See* 42 U.S.C. § 7511b(e)(9) (providing that states may propose regulations other than those adopted by EPA, but must consult with EPA regarding whether any other state or local government has promulgated or is promulgating regulations on consumer or com-

mercial products covered under the Act); *see also* H.R.Rep. No. 490, 101st Cong., 2d Sess. 254 (1990) ("states remain free to process and promulgate such regulations"). As plaintiffs point out in their moving papers, three states have either proposed or promulgated consumer products rules following the enactment of the 1990 amendments. New York and California have fully enacted regulations and Massachusetts is in the process of proposing regulations. *See* N.Y.Comp.Codes R. & Regs. tit. 6 § 235; Cal.Code Regs. tit. 17 div. 3.1(8.5)(1) § 94502; Mass.Regs.Code tit. 310 § 7.26.

Although the CAAA provides a new deadline for attainment of ozone NAAQS, this is certainly not a license for the state to take its time in complying with the NAAQS. The new attainment date is simply an outside date, and the CAAA explicitly reaffirms the Act's primary legislative purpose of attaining NAAQS "as expeditiously as practicable." 42 U.S.C. § 7511. Nothing in the amendments indicates that the state should delay implementing its own ozone reduction strategies, which it voluntarily undertook, until after the EPA has acted.[4]

Delaying action until after the EPA has issued its regulations or control technique guidelines, moreover, will result in inordinate delay. As noted above, the EPA's report on VOS emissions from consumer and commercial products was due to be submitted to Congress by November 15, 1993. 42 U.S.C. § 7511b(e)(3)(A). The EPA is therefore already over seven months behind schedule. According to the certifications submitted by plaintiffs and State defendants, the study is expected to be released in late June or July of this year and a report is to be presented to Congress later this summer. After the report is submitted, EPA must then divide the consumer and commercial products into four groups and will begin only then to regulate one group at a time, every two years. Pursuant to this schedule, EPA's promulgation of rules or guidelines would not be complete until at least eight years from now. Such a tremendous delay would surely violate the mandate of the Act, reaffirmed in the CAAA, to act "as expeditiously as practicable."

Indeed, in *American Lung II*, I rejected a similar argument in connection with the implementation of the strategy involving barge loading of gasoline. In that instance, intervenor-defendant American Petroleum Institute ("API") objected to the timetable proposed by DEPE on the ground that the United States Coast Guard intended to issue its own nation-wide regulations for the use of vapor controls in barge loading. Indeed, the United States Department of Transportation had asked certain states, including New Jersey, to put off their regulatory efforts so that a uniform national policy could be adopted. API contended that New Jersey should therefore not regulate barge loading until after the Coast Guard had implemented its nation-wide regulations. I rejected this argument, finding that such a delay would violate "New Jersey's federal Clean Air Act duty to move as expeditiously as practicable." 26 ERC at 1871. That decision was affirmed by the Third Circuit. 871 F.2d at 330.[5]

---

4. *Coalition against Columbus Center v. City of New York*, 967 F.2d 764 (2d Cir.1992), which counsel for the State defendants cited during oral argument, is not to the contrary, and in fact supports the plaintiffs' position. The issue in that case involved a provision in New York's SIP requiring New York "to assure that mitigating measures will be implemented ... so as to provide for attainment by December 31, 1987," the attainment date set forth in the 1977 amendments. *Id.* at 767. The Second Circuit held that the attainment date had been extended by the 1990 amendments. The court, however, distinguished a state's general obligations in a SIP to attain NAAQS from specific strategies for attaining those NAAQS:

The extension [for attainment of the NAAQS] did not automatically effect a postponement of the deadlines for accomplishing all the specific tasks that a state obligated itself to perform in a SIP. A SIP commitment to shut down a particular source of pollution or to install a particular pollution control device by a specified date would *not* be extended by force of the 1990 amendments alone.

*Id.* at 773 (emphasis added). The matter currently before the court does not involve a general obligation under the SIP, but rather, a specific strategy for attainment of the ozone NAAQS, *e.g.*, promulgation of regulations for the reduction of VOS content of consumer and commercial products.

5. State defendants' attempts at distinguishing the barge loading matter are unavailing. Indeed, the barge loading strategy presented a stronger case for delaying action by the state because the

■ Nor does DEPE's purported lack of expertise and scientific knowledge excuse it from complying with the terms of the SIP as modified by the Scheduling Order. First, I note that the obligations the state now seeks to avoid are those which it voluntarily undertook by adopting the SIP in 1983 and proposing the Scheduling Order in 1987, presumably when the body of knowledge on VOS emissions from consumer and commercial products was much smaller. As defendants themselves point out, a final version of the EPA's comprehensive study is about to be released.[6] Moreover, DEPE has available to it the state reports and regulations of New York, California and Massachusetts.[7] In addition, under the CAAA, the EPA is required to establish "a clearinghouse of information, studies, and regulations proposed and promulgated" regarding consumer and commercial products and to disseminate such information upon request. 42 U.S.C. § 7511b(e)(9). Indeed, in light of this provision, DEPE's claim that it will have to "duplicate" the EPA's extensive research efforts is meritless. In fact, in *American Lung II*, I rejected the argument that DEPE lacked the expertise to promulgate appropriate barge loading regulations, adding that

New Jersey should consult thoroughly with the Coast Guard on the barge-loading subject generally, and should also do what it can, without veering from the proposed barge-loading timetable, to learn from the Coast Guard's expertise in this area, and to promulgate regulations which anticipate differences between the state-authored and federal schemes.

26 ERC at 1871. These principles apply with equal force in the instant situation. In fact, as noted above, the CAAA expressly requires states that propose regulations other than those adopted under the CAAA to consult with the EPA. *See* 42 U.S.C. § 7511b(e)(9).[8]

Nor does the State's lack of resources excuse compliance with the Scheduling Order. In *American Lung II*, I rejected the argument that the cost of compliance justifies a departure from the requirements of the SIP and Scheduling Order. I found that this would essentially require me to rewrite the SIP and held that "my sole task ... is to consider how fast New Jersey's SIP may practicably be implemented." 26 ERC at 1870. Moreover, I note that by relying on data obtained from the EPA, as well as from the other states, duplication of efforts is minimized and resources thereby conserved.

■ In a similar vein, DEPE also argues that promulgation of its own regulations before the EPA promulgates its rules will result in the disruption of consumer and commercial product markets. This argument is also without merit. Similar economic impracticability arguments have been rejected by this court and the Third Circuit:

API also argues that the timetable set by the court will engender unnecessary expenses because the barge owners and dock owners may have to pay to implement controls that conform to the New Jersey regulations, and pay again to modify the controls if the federal regulations are adopted and are not identical.... We believe that the district court correctly rejected these arguments.

871 F.2d at 330. As the Third Circuit noted, "it is not for a federal court to revise a SIP merely because it thinks it is better able to create economic efficiency." 871 F.2d at 329; *see also Union Electric Co. v. EPA*, 427 U.S.

---

federal government had requested that New Jersey delay its regulatory efforts. Here, in contrast, the CAAA contains two savings clauses applicable to state regulatory efforts.

**6.** According to the certification of Robert C. Shinn, Jr., DEPE Commissioner, the EPA report is comprised of 15 volumes.

**7.** The fact that the regulations of other states cannot be simply "transferred" to New Jersey is no excuse for New Jersey not to promulgate its own regulations.

**8.** State defendants argue that the EPA will be "unprepared" to offer advice and that any advice that it could offer would be "tentative." Def.Br. at 26. As an initial matter, this argument is completely speculative. Moreover, it is simply another effort on DEPE's part to be relieved of its obligations under the SIP and Scheduling Order until final promulgation of rules by the EPA.

**910**

246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976) (a SIP cannot be rejected, whether by the EPA or the court, on the grounds that it is economically infeasible). Accordingly, such an argument cannot be used as a justification to amend the Scheduling Order.

For all these reasons, State defendants' motion is denied.[9] In so ruling, I note my earlier observation that DEPE essentially seeks to be relieved of its independent obligations under the SIP and the Scheduling Order. To the extent DEPE seeks to eliminate a requirement of the SIP, however, DEPE must comply with the statutory provisions governing revision of a SIP, 42 U.S.C. §§ 7410(a)(2)(H), 7410(*l*). *See Concerned Citizens of Bridesburg v. EPA*, 836 F.2d 777, 785 (3d Cir.1987) (statutory procedures for SIP revision apply to any modification in the requirements of a SIP, "including 'a change in the plan itself which deletes [a] requirement.'") (citation omitted); *see also American Lung*, 871 F.2d at 329 ("If parties think that changes in circumstances make the requirements of the SIP unduly harsh, the proper course in general is to comply with administrative procedures for revising the SIP.").

Plaintiffs have proposed the following schedule for the consumer and commercial products strategy:

Submit proposed rules to
  OAL ...................... 1/31/95
Publish in the New Jersey
  Register .................... 2/28/95
Public Hearing ............... 3/31/95
Adopt and submit to OAL .... 6/30/95
Commence compliance (effective date of rule) ......... 8/31/95
Require full compliance ........ 4/30/96

I find this timetable to be reasonable given the fact that it has been six years since the Scheduling Order's July 1988 deadline for the submission of proposed rules to the OAL and five and one half years since the Order's

January 1989 deadline for the effective date of a final rule. Moreover, the intervals between each stage of compliance are very similar to those in the original schedule which the DEPE itself proposed in 1987.[10] I also find that the proposed schedule is reasonable in light of the fact that DEPE has already proposed and adopted a rule which was invalidated purely on procedural grounds. Accordingly, DEPE is not writing on a clean slate. Finally, as discussed above, DEPE has the benefit of the EPA study, as well as the regulations and reports from other states. I will therefore adopt the schedule outlined above.

Conclusion

For all the foregoing reasons, plaintiffs' motion to enforce the Scheduling Order entered by this court on November 19, 1987 is granted and the State defendants' cross-motion to amend the Scheduling Order is denied.

---

9. Even assuming that the 1990 amendments provided a proper basis for relief from judgment, I agree with plaintiffs that defendants' motion was not made within a reasonable time, as required under Rule 60(b)(6). The State defendants waited almost three years after the amendments were enacted to seek relief, and then only in response to plaintiffs' motion to enforce the Scheduling Order.

10. State defendants mistakenly argue that they are provided only thirty days from entry of an order on these motions to submit proposed rules to the OAL. The proposed schedule gives DEPE almost seven months. Similarly, the schedule gives the regulated community eight months to comply with the final rule, rather than six.