**AMERICAN LUNG ASSOCIATION OF N.J., et al., Plaintiffs,**

v.

**Thomas H. KEAN, Governor of N.J., et al., Defendants.**

Civ. A. No. 87–288.

United States District Court,
D. New Jersey.

Sept. 24, 1987.

Edward Lloyd, Rutgers Environmental Law Clinic, Newark, N.J., Eric A. Goldstein, Donald S. Strait, Natural Resources Defense Council, New York City, for plaintiffs.

Paul H. Schneider, for W. Cary Edwards, Atty. Gen., of N.J., Richard J. Hughes Justice Complex, Trenton, N.J., for State defendants.

Ralph J. Marra, Jr., Asst. U.S. Atty., Michael M. Wenig, U.S. Dept. of Justice, Newark, N.J., for defendant E.P.A.U.S.

Dennis M. Toft, Kimmelman, Wolff & Samson, P.A., Roseland, N.J., for amicus curiae American Petroleum Institute.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is a citizen's suit brought under § 304 of the federal Clean Air Act, 42 U.S.C. § 7604 (1982), by the American Lung Association of N.J. and other New Jersey non-profit associations, against officials of the State of New Jersey (hereinafter referred to collectively as "New Jersey") and the Federal Environmental Protection Agency (EPA). In their complaint, plaintiffs claim that New Jersey has violated the Act by failing to implement nine regulatory strategies intended for the con-

trol of ozone levels in New Jersey's air, as prescribed by the State Implementation Plan (SIP) for ozone-pollution control filed by New Jersey with the EPA in accordance with the Act. Plaintiffs further claim that the EPA has failed to enforce the Act in the face of New Jersey's noncompliance.

Before me now is plaintiffs' motion for partial summary judgment. Plaintiffs seek a finding of liability on New Jersey's part in regard to seven of the nine regulatory strategies on which the state has allegedly taken insufficient action. Plaintiffs also seek an order compelling the state to submit a proposed timetable for implementing the seven strategies at issue. At this time, plaintiffs seek no further ruling on relief from the state, and no ruling on any aspect of the claims against the EPA.

Both plaintiffs and New Jersey have filed voluminous papers on this motion, addressing at length, among other issues, the proper measurement and treatment of New Jersey's ozone-pollution problem. In addition, the EPA has filed a brief in response to certain claims made by New Jersey regarding the binding effect of portions of the New Jersey SIP. Finally, the American Petroleum Institute (API) has filed, as *amicus curiae*, papers in defense of New Jersey on this motion. Earlier in the case I denied motions by API and other trade associations to intervene as defendants, without prejudice to any reapplication for intervention should the case reach the remedy stage. Despite my ruling on intervention, I granted leave to API to participate as *amicus curiae* on this motion in order to consider its alleged insights into the problems presented. *See Harris v. Pernsley,* 820 F.2d 592, 603 (3d Cir.1987); *Yip v. Pagano,* 606 F.Supp. 1566, 1568 (D.N.J. 1985). API's participation has been limited to the submission of written arguments.

Plaintiffs' motion is posed under Fed.R. Civ.P. 56(a). According to Rule 56, summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893,

896 (3d Cir.1987). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *Celotex,* 106 S.Ct. at 2553. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*", or the factual record will be taken as settled and judgment will be entered as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting* Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). Given this test, I must first decide whether at this point there remain genuine issues of material fact regarding New Jersey's liability for the seven allegedly stalled strategies. If no facts remain in issue, I may then consider whether plaintiffs merit judgment as a matter of law. Before discussing the factual and legal issues in dispute, however, I shall lay the background to this motion by discussing the issues on which the parties voice no disagreement.

Ozone is a chemical compound whose presence in the upper layers of the atmosphere serves as a beneficient screen against harmful ultraviolet radiation, but whose presence near ground level presents a health hazard. This case, and those portions of the Clean Air Act relevant to it, deal with the problem of ozone near ground level. This ozone is a prime ingredient of the smog which at times afflicts New Jersey. Exposure to ozone can impair lung functions, reduce resistance to respiratory infection, and exacerbate asthma, bronchitis, and emphysema. Primarily, this ozone is produced when certain chemical substances known as "volatile organic compounds" or "volatile organic substances" (VOSs) are emitted into the air. VOSs are emitted when, inter alia, gasoline is

pumped or certain solvents, paints, or coatings are used.

Ozone pollution is one of the targets against which Congress took aim in the Clean Air Act of 1970, as amended in 1977, 42 U.S.C. §§ 7401 *et seq.* The Act provides a comprehensive framework for controlling airborne pollutants generally. Under the Act, the EPA compiles a list of harmful air pollutants, 42 U.S.C. § 7408(a)(1), and then promulgates ambient air quality standards. The air quality standards set limits on the atmospheric concentrations which will be tolerated for each pollutant the EPA has identified. 42 U.S.C. § 7409(b)(1). The design and implementation of concrete plans to achieve these pollutant limits is left, in the first instance, to the several states. Each state must file with the EPA a State Implementation Plan (SIP) which specifies strategies for bringing that state into compliance with EPA standards, within deadlines set by the Act. 42 U.S.C. § 7410. Once a SIP is approved by the EPA, the state is bound as a matter of federal law to follow its provisions. *See Friends of the Earth v. Carey,* 535 F.2d 165, 169 (2d Cir. 1976), *cert. denied* 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977); *see also Baughman v. Bradford Coal Co., Inc.,* 592 F.2d 215, 216 n. 1 (3d Cir.1979). Ozone has been the subject of EPA standards since 1971. Therefore, ozone control strategies have long been required in the SIPs of ozone-afflicted states.

Congress originally contemplated that the state air-quality SIPs would be filed with the EPA in 1971 and become effective in 1972, and that EPA air quality standards would be attained by 1975, with some extensions to 1977. By 1976, however, it had become apparent that some areas of the country were making progress at a much slower rate, if at all. *See* 44 Fed.Reg. 20,372 (April 4, 1979). Thus, in 1977 Congress amended the Act to provide in certain instances for both longer compliance deadlines and more stringent compliance requirements. States which had not yet attained EPA standards were to do so "as expeditiously as practicable" but not later than December 31, 1982. 42 U.S.C. § 7502(a)(1). States with especially severe ozone problems could receive an additional extension to December 31, 1987 for meeting EPA ozone standards, but only by complying with certain additional cleanup provisions. These included the filing of new, revised SIPs that contained "enforceable measures to assure attainment" of the EPA ozone standards by December 31, 1987. 42 U.S.C. § 7502(c). *See Connecticut Fund for the Environment, Inc. v. EPA,* 672 F.2d 998, 1001 (2d Cir.1982).

New Jersey has had an ozone SIP since 1973, when in the face of missed deadlines by the state the EPA itself promulgated ozone control strategies for New Jersey. *See* 38 Fed.Reg. 31,388 (Nov. 13, 1973). In 1983, the state secured an extension of its ozone compliance deadline to December 31, 1987, the latest possible deadline under the Act, in part by submitting a revised ozone SIP which EPA found acceptable. *See* 48 Fed.Reg. 51,472 and 51,479 (Nov. 9, 1983). That SIP addressed, inter alia, strategies for controlling ozone levels through the reduction of VOS emissions into the air. It is that SIP which plaintiffs claim has been unlawfully neglected by New Jersey and the EPA. The seven strategies in the 1983 SIP which are at issue on this motion are: the use of devices known as "Stage II vapor controls" to trap gasoline fumes which escape from gasoline service-station nozzles when gas is pumped, the regulation of gasoline loading onto marine barges, the regulation of small industrial surface coating operations, the regulation of small manufacturing operations including chemical manufacturing and distillation operations, the regulation of architectural coatings, the regulation of solvent-based consumer and commercial products, and the regulation of automobile refinishing operations.

Plaintiffs claim on this motion that New Jersey has failed to take all the steps required by its 1983 ozone SIP to bring the seven strategies named above into effective operation. Thus, plaintiffs claim, New Jersey has violated its own SIP and should be found liable under the Clean Air Act. Specifically, plaintiffs claim that, in regard to each of the seven strategies, the SIP

compels New Jersey to ultimately do three things: propose regulations, promulgate final regulations, and implement those final regulations through proper enforcement. Because some steps have already been taken in regard to some strategies, and because alleged implementation deadlines for each of the strategies except stage II vapor controls do not run until December 31, 1987, plaintiffs at this time claim liability based on the following alleged failures by the state: failure to promulgate final regulations for stage II vapor controls by July 1, 1985 and failure to implement them by July 1, 1986; failure to propose regulations for barge loading of gasoline, for the use of solvents in architectural coatings, for the use of solvents in solvent-based consumer and commercial products, and for the conduct of automobile refinishing operations by January 1, 1986, and failure to promulgate final regulations in these areas by January 1, 1987; and failure to promulgate final regulations for small industrial surface coating operations and for small manufacturing operations by January 1, 1987.

In its answer to plaintiffs' complaint, New Jersey expressly admitted that it has failed to take each of the steps described above. Nevertheless, New Jersey has vigorously opposed plaintiffs' motion. New Jersey argues initially that genuine issues of material fact must still be settled before New Jersey's Clean Air Act liability can be adjudged. New Jersey contends that the following issues require further factual resolution: first, whether the 1983 SIP requires New Jersey to take the steps it admits it has not taken, or whether instead the SIP commits New Jersey only to studying the feasibility of the seven strategies and implementing the ones it finds feasible; second, whether New Jersey has "dragged its feet" on the seven strategies; third, whether New Jersey is a "national leader" in ozone control generally; and fourth, whether New Jersey will fail to meet the EPA's ozone standards by the December 31, 1987 deadline even with all seven strategies implemented, because "upwind" states produce most of the ozone afflicting New Jersey.

The second, third, and fourth fact issues suggested by New Jersey are all irrelevant to the motion at hand. The question of New Jersey's liability in this case is unrelated to the state's intentions, the state's ozone control efforts aside from the seven SIP strategies, and the predicted efficacy or inefficacy of those seven strategies. Liability in this case turns on the sole issue of whether New Jersey has complied with its own federally mandated plan. The Senate committee that devised the procedure for citizen suits under the Clean Air Act made it clear that in a citizen suit for SIP enforcement, "the issue before the courts would be a factual one of whether there had been compliance." S.Rep. No. 91–1196, 91st Cong., 2d Sess., at 37 (1970). In *Friends of the Earth,* the Second Circuit adopted this view, citing the Senate Committee passage. 535 F.2d at 178–79. The Second Circuit stated that "a plan, once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state." *Friends of the Earth,* 535 F.2d at 169. As a result, a district court "is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement." *Friends of the Earth,* 535 F.2d at 173. *See also, National Resources Defense Council v. N.Y. Department of Environmental Conservation,* 668 F.Supp. 848, 852 (S.D.N.Y.1987). I agree with the position taken by the Second Circuit, and therefore dismiss the aforementioned second, third, and fourth fact arguments as unrelated to the SIP enforcement action at hand. If New Jersey doesn't like its ozone SIP or considers its obligations under the SIP to be undeserved, it should plead that case to the EPA. *See* 42 U.S.C. §§ 7410(a)(3) and 7410(f); *Train v. National Resources Defense Council,* 421 U.S. 60, 89–90, 95 S.Ct. 1470, 1486–87, 43 L.Ed.2d 731 (1975); *Friends of the Earth,* 535 F.2d at 178.

I now turn to New Jersey's claim that a material issue of fact exists regarding what, if anything, the 1983 SIP requires New Jersey to do to advance the seven strategies in question. New Jersey interprets the text of its SIP as compelling

the state only to study the feasibility of the seven strategies and to implement only those strategies it finds feasible. Plaintiffs claim in contrast that the SIP compels, inter alia, the specific rulemaking and implementation steps discussed earlier, which the state admits it has not taken. New Jersey contends that the parties' difference of opinion on the proper interpretation of the SIP creates a material issue of fact which cannot be resolved without trial. I am unpersuaded of this, for the following reasons.

First, an examination of the text of the SIP itself reveals little reason, if any, to doubt that New Jersey did manifest in the SIP an objective intention to commit itself to the scheme of rulemaking and enforcement argued for by plaintiffs. Pages i–ii of the SIP describe the process by which the SIP was created. The SIP states that the EPA has required "a revised plan ... demonstrating attainment of the ozone ... standards by December 31, 1987." Later portions of the SIP describe, inter alia, the seven strategies at issue as necessary if New Jersey is to attain the EPA's ozone standards. See the 1983 SIP at pages 14, 15, 19, 20, 23, 27, 28, and 49. At page 1, the SIP describes itself as "how New Jersey proposes to eliminate unhealthful concentrations of ... ozone." At page 3, the SIP states that it "addresses the attainment of the ozone ... ambient standards by 1987." At page 4, the SIP asserts that it "would extend stationary source control [a term which covers the seven strategies at issue here] to all significant sources of volatile organic substances." In regard to the Stage II vapor control strategy, the SIP states that "[w]hen measures to reduce VOS emissions from filling automobile gasoline tanks are adopted in New Jersey (see Schedule for Implementation), they will supplement the gasoline distribution standards (Stage I requirements) already contained in subchapter 16." 1983 SIP at pages 47–48. The "Schedule for Implementation" referred to here is contained elsewhere in the SIP, and lists the rulemaking and enforcement deadlines argued for by plaintiffs. It will be more fully described below. In regard to the other six strategies at issue on this motion, the SIP states that "New Jersey commits to the following stationary source extraordinary measures: barge loading of gasoline, ... lowering emission rate exclusions in N.J.A.C. 7:27–16.6, lowering coating rate exclusions in section 16.5, automobile refinishing operations, architectural coatings, and consumer solvents." 1983 SIP at page 49. Finally, at pages 54–55 the SIP sets forth a table entitled "Schedules for Implementation." Under the subtitle "Stage II Vapor Recovery" the table lists July 1, 1985 as the deadline for final regulations and July 1, 1986 as the deadline for compliance. Under the subtitle "Extraordinary Measures," covering the other six strategies, the table lists January 1, 1986 as the deadline for proposed regulations, January 1, 1987 as the deadline for final regulations, and December 31, 1987 as the deadline for compliance.

These citations illustrate how, when read as a whole, the SIP manifests an intention on the part of New Jersey to commit itself to the schedule on which plaintiffs' motion is based. There is little in the document to suggest any contrary intent. New Jersey points to the fact that the "Schedules for Implementation" are described at page 54 of the SIP as "projected"; but that word indicates at most that the deadlines should be taken with a reasonable degree of flexibility, and not that the steps for implementation should be rendered optional at the choice of the state. Based on the text of the SIP alone, I cannot conclude that a genuine factual dispute exists regarding the extent to which the SIP compels New Jersey to act.

Second, the federal statute and regulations under which the 1983 SIP was prepared and presented to the EPA require that the SIP be read as plaintiffs suggest, as establishing as binding the aforementioned timetables for promulgating and enforcing state ozone-control regulations. My discussion above, concerning New Jersey's intentions as manifested in the SIP, implicitly accepted, if only for the purposes of argument, New Jersey's implicit assertion that a SIP is properly read as a con-

tract between the state and the federal government. But a SIP is not, in any meaningful sense of the term, a contract, in which obligations are created by mutual assent. Instead, a SIP is a set of obligations imposed on a state by federal mandate. It is true that states are given the opportunity to write their own SIPs, and thus choose for themselves certain details of the regulatory scheme they must obey. But a state cannot use its SIP to write around the mandatory requirements imposed by the Act and the regulations promulgated under the Act. I have already indicated that 42 U.S.C. § 7502, which permitted New Jersey to file the 1983 SIP incorporating the December 31, 1987 deadline, required that all such SIPS "shall contain enforceable measures to assure attainment." 42 U.S.C. § 7502(c). In addition, the EPA's own published criteria for acceptance of such SIPs specified that they "must" include "implementation schedules." 46 Fed.Reg. 7182, 7186 (Jan. 22, 1981). At an earlier date, the EPA had announced that such schedules "will be considered part of the applicable implementation plan and thus will represent a commitment on the part of the State to meet the key milestones set forth." 43 Fed.Reg. 21,673, 21,675 (May 19, 1978). Given these legal requirements of New Jersey's 1983 SIP, I will not read ambiguity into the document to make it say less than the law requires.

Third, the EPA itself interprets the 1983 SIP as imposing upon New Jersey the compliance schedule for which plaintiffs argue. See the EPA's Memorandum in Response to New Jersey's Opposition to Plaintiffs' Motion. Although the EPA's interpretation of New Jersey's SIP obligations does not control my decision, the agency's views are entitled to deference. See, e.g., State of N.J. v. Dep't of H.H.S., 670 F.2d 1262, 1282–83 (3d Cir.1981). Thus, I consider it significant that the EPA reads the SIP as binding New Jersey to the aforementioned timetables.

Fourth, in the course of reviewing and finally accepting the SIP at issue here, the EPA instructed New Jersey to revise the document in order to strengthen, and clarify the State's commitment to, the implementation measures it contained. See 48 Fed.Reg. 5,144, 5,144–49 (February 3, 1983); 48 Fed.Reg. 36,139, 36,140–43 (August 9, 1983); 48 Fed.Reg. 51,472, 51,473–76 (Nov. 9, 1983). Thus, the specific "course of dealing" in which New Jersey and the EPA engaged regarding the 1983 SIP should have made it clear to New Jersey that the rulemaking and implementation schedules contained in the SIP would be binding on the state. Finally, I note that were the SIP to contain ambiguities concerning compliance, they might properly be construed against the author of the SIP, the state itself.

■ For all these reasons, I consider it settled for purposes of this motion that the compliance schedule outlined by plaintiffs is the schedule imposed upon New Jersey as a matter of federal law. I reject New Jersey's attempt to characterize the contents of the SIP as, essentially, ambiguous. I also reject the argument offered by API as *amicus* that New Jersey's interpretation of the SIP should be accorded deference. New Jersey is the regulated party here. The fact that, under the Act, New Jersey was given a part in designing the regulations which bind it does not mean that New Jersey should now be afforded the opportunity to define away attempts at regulatory enforcement. Indeed, such a conclusion would render the regulatory effort in general a useless exercise. I also repeat my earlier observation that New Jersey, as author of the SIP, should not be afforded deference in interpreting the document.

■ I have now considered and rejected each of New Jersey's arguments for the existence of genuine issues of material fact. I may now decide whether plaintiffs are entitled to judgment as a matter of law. As I noted earlier, New Jersey has admitted to having missed all the deadlines on which plaintiffs base this motion. Given my earlier explication of the legal basis for liability in this case, I find that New Jersey has violated its 1973 ozone SIP by failing to take the steps described earlier to implement the seven specific ozone-control strat-

egies. I shall enter against New Jersey and in favor of plaintiffs a judgment of liability in regard to these missed steps.

■ In reaching this conclusion, I reject a number of legal arguments advanced by API as *amicus* and by New Jersey. First, I reject API's claim that this case will not be ripe for review until it becomes apparent that on December 31, 1987 New Jersey will not be complying with the EPA's ozone standards. As my earlier discussion should make clear, this case concerns New Jersey's compliance with its SIP. New Jersey's compliance with the ozone standards themselves is an issue logically once-removed from the question of SIP compliance, and for reasons stated in my discussion of the standard of liability faced by New Jersey, it is not an issue legally relevant to this case. Second, I reject API's argument that the Tenth Amendment bars federal intrusion into state rulemaking and rule enforcement of the kind at issue here. In *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court stated in the broadest of terms that "State sovereign interests are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." 469 U.S. at 552, 105 S.Ct. at 1018. *Garcia* ended attempts to instill substantive detail in the open-ended terms of the Tenth Amendment. In the face of *Garcia*, I reject API's invocation of states' rights. Third, I reject API's argument that this court lacks subject matter jurisdiction over Clean Air Act suits brought by citizens against states which violate their own SIPs. Section 304 of the Act, 42 U.S.C. § 7604, states in part that federal courts have jurisdiction over cases in which "any person" commences "a civil action on his own behalf—(1) against ... any government instrumentality ... who is alleged to be in violation of (A) an emission standard or limitation under this chapter ..." Section 7604 continues by stating in part that "(F) For purposes of this section, the term 'emission standard or limitation under this chapter' means—....(3) ... any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements ... which is in effect under this chapter ... or under an applicable implementation plan." Since plaintiffs' suit fits within the definition of actions over which federal jurisdiction is granted under § 304, the Act clearly provides this court with jurisdiction over this case. *See League to Save Lake Tahoe, Inc. v. Trounday*, 598 F.2d 1164, 1169–72 (9th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979); *see also Council of Commuter Organizations v. Metropolitan Transit Authority*, 683 F.2d 663, 670–71 (2d Cir.1982).

■ Finally, I reject at this time New Jersey's argument that relief against the state would violate principles of equity. These arguments are irrelevant to my findings of liability today. New Jersey should recast these arguments to the extent they are applicable when it takes its position on the undecided issue of what relief plaintiffs are due. I note that plaintiffs have sought as part of this motion an order compelling New Jersey to submit a proposed timetable for SIP compliance. In order to properly consider of the relief issue, I shall order the parties to submit by October 30, 1987 proposed timetables for New Jersey's compliance with its SIP, and to appear on November 9, 1987 for oral argument on their submissions.

In conclusion, I have granted in its entirety plaintiffs' motion for partial summary judgment on the issue of New Jersey's liability under the Clean Air Act for failure to comply with its 1983 ozone SIP. The parties shall follow with the briefing and argument schedule set out above so that the court may proceed to the issue of what relief plaintiffs are due from New Jersey.

An appropriate order has been filed.