AMERICAN PETROLEUM INSTITUTE, APPELLANT, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENT, AND AMERICAN LUNG ASSOCIATION OF N.J.; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NEW JERSEY ENVIRONMENTAL LOBBY; NEW JERSEY AUDUBON SOCIETY; SIERRA CLUB, NEW JERSEY CHAPTER; N.J. PUBLIC INTEREST RESEARCH GROUP; NEW JERSEY ENVIRONMENTAL FEDERATION; AMERICAN LITTORAL SOCIETY, INTERVENOR/CO–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 18, 1989—Decided February 9, 1989.

Before Judges PRESSLER, SCALERA and STERN.

*Dennis M. Toft* argued the cause for appellant (*Kimmelman, Wolff & Samson,* attorneys; *G. William Frick, David T. Deal,* and *Thomas S. Llewellyn,* of counsel; *Dennis M. Toft,* on the brief).

*Paul H. Schneider,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Paul H. Schneider,* on the brief).

*Edward Lloyd* argued the cause for intervenor/co-respondents (Rutgers Environmental Law Clinic and Natural Resources Defense Council, Inc., co-counsel; *William W. Buzbee, Eric A. Goldstein,* and *Edward Lloyd,* on the brief).

PER CURIAM.

Appellant American Petroleum Institute challenges the promulgation by the Department of Environmental Protection, pursuant to the authority of the Air Pollution Control Act, *N.J.S.A.* 26:2C–8.1 to 8.5 (control of air contaminants from motor vehicles), of amendments of *N.J.A.C.* 7:27–16.1 and 16.3 which prescribe an implementation schedule for what is known as Stage II Vapor Recovery. Stage II Vapor Recovery is a system designed to capture gasoline vapors which would otherwise enter the atmosphere when gasoline is pumped into motor vehicle gasoline tanks. We conclude that the contested regulations are valid.

The relevant background of the amendments is succinctly explained as follows by the Summary accompanying the proposed regulation:

On September 14, 1987, the United States District Court ordered the Department [of Environmental Protection] to propose a schedule for prompt implementation of Stage II Vapor Recovery. (*American Lung Ass'n v. Kean,* [670 F.Supp. 1285 (D.N.J., 1987)] *Civ.* No. 87–288). By that time, various deadlines in the September 22, 1986 proposal had already passed, necessitating revisions to the proposal. To assure adequate public notice and participation and to assure the enforceability of Stage II Vapor Recovery under State law, the Department is now reproposing Stage II Vapor Recovery which it intends to adopt prior to the end of this year and implement in an expeditious manner.

Volatile organic substances, in the presence of sunlight, form ozone and other highly reactive pollutants commonly referred to as smog. Ozone is a known respiratory irritant seriously affecting those with chronic respiratory illnesses. Further, it significantly reduces the yield of important food crops and causes serious degradation of plastics and rubber. Control strategies for reducing atmospheric ozone concentrations are primarily directed toward the control of emissions of VOS. Subchapter 16 is designed to control industrial and commercial sources of VOS.

The Stage II Vapor Recovery requirements are set forth in *N.J.A.C.* 7:27–16.-3. *N.J.A.C.* 7:27–16.3(f) requires that the transfer of gasoline into vehicular fuel tanks be performed using a vapor control system approved by the Department which is designed, operated and maintained to prevent VOS emissions to the outdoor atmosphere by no less than 95 percent by weight at all facilities and to prevent overfilling of vehicular fuel tanks and spillage. California's experience with certifying vapor control systems demonstrates that vapor control systems capable of preventing VOS emissions to outdoor atmosphere by no less than 95 percent by weight are readily available. *N.J.A.C.* 7:27–16.3(f) does not apply to gasoline dispensing facilities with an average monthly throughput of 10,000 gallons or less. The provisions of *N.J.A.C.* 7:27–16.3(f) will require that approximately 4,200 facilities be equipped with Stage II Vapor Recovery controls.

Stage II Vapor Recovery systems capture gasoline vapors which are forced out of the vehicle tank and prevent their emission to the atmosphere using vapor balance, vapor aspirator, or vacuum assist control systems. These systems are currently installed on most of the gasoline stations in 26 counties of California and many of the stations in the District of Columbia and St. Louis, Missouri.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The Department is proposing a two phase implementation schedule for Stage II Vapor Recovery. *N.J.A.C.* 7:27–16(r) will require that facilities having an average monthly throughput of 40,000 gallons or greater achieve compliance with the provisions of *N.J.A.C.* 7:27–16.3(f) by December 30, 1988. *N.J.A.C.* 7:27–16(s) will require that facilities having an average monthly throughput of

less than 40,000 gallons achieve compliance by December 29, 1989. The two phase implementation schedule will achieve the majority of the air quality benefits available from the Stage II Vapor Recovery program as quickly as is practicable.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The purpose of the Stage II Vapor Recovery program is to reduce VOS emissions in order to attain the National Ambient Air Quality Standards (NAAQS) for ozone, but there are added benefits. There will be a reduction in the emissions of benzene, a known human carcinogen, and ethylene dibromide and ethylene dichloride, which are regulated by the Department as hazardous air pollutants (see *N.J.A.C.* 7:27–17). In addition, gasoline which would otherwise be lost as a vapor, will be recovered and recycled. California reports that in 1981, 15 million gallons of gasoline were saved by the Stage II Vapor Recovery program. It is estimated that New Jersey can save over 3.7 million gallons per year when the program is fully implemented. [19 *N.J.R.* 1939 (November 2, 1987)]

Following public hearings, the regulations in their proposed form were adopted, effective January 19, 1988. See 20 *N.J.R.* 186 (January 19, 1988).

Our review of the record, including the public hearing transcripts, persuades us that the regulations constitute a perfectly valid and unexceptionable exercise of the rule-making power quite independently of any considerations of *res judicata,* collateral estoppel, federal preemption or federal supremacy. We consequently uphold these regulations as a matter of state administrative law, concluding that appellant has failed to overcome the presumption of validity to which they are entitled by reason of their evident conformance with the legislative goals of the enabling statute and their evident inclusion within the scope of the delegated administrative authority. *See, i.e., Franklin v. New Jersey Dept. of Human Services,* 111 *N.J.* 1, 17 (1988); *Dougherty v. Human Services Dep't.,* 91 *N.J.* 1, 6 (1982); *GATX Term. Corp. v. Environmental Prot. Dep't.,* 86 *N.J.* 46, 52 (1981). We reject appellant's contention that the arbitrary, capricious and unreasonable character of the regulations is demonstrated by an earlier administrative perception that New Jersey should not implement the system until "upwind" states do so as well. Clearly the Department was at liberty, whether as a result of federal litigation or for any other

good reason, to reconsider, modify and alter its views on the appropriate methodology for implementation of both federal and state clean air standards.

We also reject appellant's contention that the implementation schedule proscribed by the regulation is not supported by the record. Our review of the public hearings convince us that the contrary is so. In any event, even if material questions concerning the cost and feasibility of the compliance schedule were debatable, the agency determination is entitled to judicial deference. *See Newark v. Natural Resource Coun. Dept. Env. Prot.*, 82 *N.J.* 530, 542 (1980), *cert.* den. 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245 (1980).

The validity of the challenged regulations is sustained.