932 F.2d 269
 33 ERC 1011, 21 Envtl. L. Rep. 21,049
 COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL
RESOURCES, Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and William K.
Reilly, Administrator, Respondents.
 No. 90-3171.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 16, 1990.
Decided May 6, 1991.
 
 Richard P. Mather (argued), Asst. Director, Bureau of Regulatory Counsel, Dept. of Environmental Resources, Harrisburg, Pa., for petitioner Com. of Pa., Dept. of Environmental Resources.
 Richard B. Stewart, Asst. Atty. Gen., Mary Elizabeth Ward (argued), U.S. Dept. of Justice, Environment & Natural Resources Div., and Sara Schneeberg, Office of Gen. Counsel, U.S. E.P.A., Washington, D.C., and Stephen N. Field, Asst. Regional Counsel, U.S. E.P.A., Philadelphia, Pa., for respondents U.S. E.P.A. and William K. Reilly, Adm'r.
 Before STAPLETON, HUTCHINSON and GARTH, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 This petition for review was argued on the same day as the consolidated appeals in Delaware Valley Citizens Council for Clean Air v. Davis, 932 F.2d 256 (3d Cir.1991). The factual background and procedural history of this case are set out in detail in that opinion, to which we refer the reader. Here, we will simply summarize the facts and background most salient to this case.
 
 
 2
 In Delaware Valley, we affirmed the district court's dismissal of three counts of the plaintiffs' complaint. However, we vacated the district court's dismissal of Count Two of the complaint. The district court had dismissed Count Two for failure to state a cause of action for which relief could be granted under Federal Rule of Procedure 12(b)(6). That count alleged that the Commonwealth of Pennsylvania (Pennsylvania) failed to take certain steps to reduce ozone-producing emissions in the Philadelphia area. Arguably, Pennsylvania had promised the United States Environmental Protection Agency (EPA) it would undertake these steps in order to get the EPA to approve its proposed State Implementation Plan (Plan). Those steps were incorporated into Pennsylvania's Implementation Plan when the EPA approved them as part of Supplement One to the Plan. In Delaware Valley, we based our decision to vacate the district court order granting Pennsylvania's motion to dismiss for failure to state a claim on the language of Supplement One and the background that led to the EPA's approval of Supplement One.
 
 
 3
 In this petition for review, Pennsylvania asks us to hold that the EPA erred when it denied Pennsylvania's proposed second supplement to the Plan (Supplement Two). Supplement Two would relieve Pennsylvania from taking the additional measures promised in Supplement One on the basis of new data Pennsylvania says shows that it has attained the level of ozone reduction the Plan and the Clean Air Act, 42 U.S.C.A. Secs. 7401-7642 (West 1983 & Supp.1990), require. We will therefore consider, independently of Delaware Valley, the merits of the EPA's order denying Pennsylvania's request for approval of Supplement Two.
 
 
 4
 We have appellate jurisdiction to review the EPA's denial of Pennsylvania's proposed revision to its plan pursuant to 42 U.S.C.A. Sec. 7607(b) (West 1983).
 
 
 5
 Pennsylvania asks us to set aside the EPA's denial of its motion to reconsider the disapproval of Supplement Two. We must uphold the EPA's denial of the petition for reconsideration unless its decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. Sec. 706(2)(A) (West 1977), cited in United States Steel Corp. v. EPA, 633 F.2d 671, 673 (3d Cir.1980) (reviewing a state implementation plan).
 
 
 6
 Two of Pennsylvania's three arguments attack the EPA's denial as arbitrary and capricious. The third claims the denial was not in accordance with law. Pennsylvania first challenges the EPA's refusal to allow Pennsylvania to use updated point source data to reproject the amount of ozone creating emissions that entered the atmosphere in 1987 when the EPA passed, unfavorably on the state's proposed Supplement Two. Pennsylvania claims the EPA's rejection of its new and more accurate data is arbitrary and capricious. In a related argument, Pennsylvania also contends that it was denied fair administrative consideration because the EPA had the updated data in 1985 when Pennsylvania first submitted Supplement Two but did not reject its use until March of 1989, when the EPA finally denied Pennsylvania's petition for reconsideration of Supplement Two. Pennsylvania contends that this belated refusal to consider the updated data was also arbitrary and capricious.
 
 
 7
 Additionally, Pennsylvania contends the EPA's insistence that the reprojected emissions be permanent and enforceable is without legal authority. Pennsylvania denounces the use of this standard by the EPA because the EPA has not identified any other state against whom this requirement has been enforced. It argues that no provision of the Act supports this basis for denial and that such a requirement would necessitate production caps, a requirement it notes the EPA has not imposed on any other state. Citing two bills that were pending, one in the Senate and one in the House, at the time the briefs in this case were filed, Pennsylvania observes that currently proposed amendments to the Act would give the EPA this power. H.R. 3030, 101st Cong., 1st Sess. Sec. 101 (1990), reprinted in Joint Appendix (Jt.App.) at 594-95; S. 1630, 101st Cong., 1st Sess. Sec. 101 (1990), reprinted in Jt.App. at 599-600. The fact that the amendments include the "permanent and enforceable" language is said to be an indication that the EPA presently does not have this power.[1] Pennsylvania then goes on to argue that its actual data reliably show that the ozone standard was attained and surpassed in 1987 and, therefore, that the additional measures the state had promised to adopt and enforce when it submitted Supplement One in order to get EPA approval of its revised plan were not needed.
 
 
 8
 The EPA says that its rejection of the recalculated data was completely proper. It notes that Pennsylvania's data was updated for point sources but not area and mobile sources of ozone creating emissions. According to the EPA, use of the new point source data would be improper and misleading without calculation of the total amount of all actual 1980 ozone creating emissions as a new baseline from which to calculate a "new shortfall." In answer to Pennsylvania's argument that unreliability of the updated data was a belated arbitrary rationalization for the rejection of Supplement Two and not a reason, the EPA refers us to the presence in the administrative record of a 1987 phone call in which Pennsylvania and the EPA discussed the need to recalculate the baseline if new data were used. Jt.App. at 537.
 
 
 9
 The EPA also asserts that 42 U.S.C.A. Sec. 7410(a)(2)(B) gives it authority to require emission reduction measures to be permanent and enforceable. That section requires that measures included in a plan must "insure attainment and maintenance of [the] standard." Id. The EPA argues it has consistently enforced this statutory requirement. Moreover, the EPA says Pennsylvania has not shown that the point source emission reductions are the result of anything more than production decreases and cyclical variables.
 
 
 10
 The record shows that the EPA raised the problem that Pennsylvania's updated data was incomplete as early as 1987. Therefore, we reject Pennsylvania's argument that the EPA's refusal to consider it was an arbitrary, after-the-fact rationalization for a pre-determined rejection of Supplement Two, no matter what Pennsylvania's new evidence might show. On the merits of the EPA's refusal to consider the updated point source data, we defer to its expertise. See EPA v. National Crushed Stone Ass'n., 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980). The EPA explains that the use of incomplete data after a specific reduction of ozone creating emissions is agreed to could in fact result in a failure to attain the promised reduction because the unexpected decrease shown by the updated, incomplete data could be more than offset by increases in the factors for which updated data is missing. The complexities of accurate emission measurement and the highly technical knowledge needed in relating particular measurements to Clean Air Act standards render deference to the EPA's expertise particularly appropriate here. After examining the record, we can find no basis for holding that the EPA's decision to reject Pennsylvania's projection based on updated point source data was arbitrary and capricious.
 
 
 11
 We also reject Pennsylvania's contention that the EPA's rejection of Supplement Two was not in accord with law. 42 U.S.C.A. Sec. 7410(a)(2)(B) gives the EPA the authority to require a state to show that its attained reductions are maintainable and enforceable. The statute directs the EPA to withhold approval from a state implementation plan if the "maintenance of [the] standard" cannot be assured. Id. The newly enacted amendments to the Act that Pennsylvania cites in support of its argument that the EPA lacked this power when it rejected Supplement Two deal with EPA's power to redesignate non-attainment areas to attainment status. Clean Air Act Amendments of 1990, Pub.L. No. 101-549, Sec. 102, 104 Stat. 2399, 2418 (1990). They do not affect the preexisting powers of the EPA concerning the approval of plans or plan revisions.
 
 
 12
 The need to maintain the Clean Air Act standards once they are reached is well-recognized by the Courts. See Train v. Natural Resources Defense Council, Inc., 421 U.S. 60, 99, 95 S.Ct. 1470, 1491, 43 L.Ed.2d 731 (1975); United States Steel Corp., 633 F.2d at 674. These standards cannot be maintained unless the measures taken to achieve them are enforceable. For these reasons, and recognizing our limited scope of review, we hold that the EPA's decision to deny Pennsylvania's motion for reconsideration of the disapproval of supplement two was not arbitrary, capricious, or contrary to the law. See Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).
 
 
 13
 We will deny Pennsylvania's petition for review of the EPA's denial of Pennsylvania's motion for reconsideration of the EPA's decision not to approve Supplement Two.
 
 
 
 [1]
 These amendments were in fact signed into law by President Bush on November 15, 1990. The "permanent and enforceable" language is present in the enacted version of the bill. Clean Air Act Amendments of 1990, Pub.L. No. 101-549, Sec. 101, 104 Stat. 2399, 2402 (1990). We decide this case under the law as it existed before enactment of the amendments