932 F.2d 256
 33 ERC 1001, 21 Envtl. L. Rep. 21,055
 DELAWARE VALLEY CITIZENS COUNCIL FOR CLEAN AIR; Delaware
Valley Toxics Coalition; Sierra Club, Pennsylvania Chapter;
Pennsylvania Federation of Sportsmens Clubs; Bicycle
Coalition of the Delaware Valley; Girard Estate Area Civic
Association; Tolentine Community Center and Development
Organization; Thomas G. McFarland and Charles E. Rolan
v.
Arthur A. DAVIS, Individually, and Arthur A. Davis, as
Secretary, Pennsylvania Department of Environmental
Resources, Howard Yerusalim, as Secretary, Pennsylvania
Department of Transportation, Robert P. Casey, as Governor,
Commonwealth of Pennsylvania, the Commonwealth of
Pennsylvania, William K. Reilly, as Administrator, U.S.
Environmental Protection Agency, Stanley L. Laskowski, as
Acting Director, U.S. Environmental Protection Agency Region
III, Samuel Skinner, as Secretary, U.S. Department of
Transportation, Howard Yerusalim, Individually and as
Secretary, Pennsylvania Department of Transportation, Robert
P. Casey, Individually, and as Governor of the Commonwealth
of Pennsylvania.
Delaware Valley Citizens Council for Clean Air; Delaware
Valley Toxics Coalition; Sierra Club, Pennsylvania Chapter;
Pennsylvania Federation of Sportsmens Clubs, Bicycle
Coalition of the Delaware Valley; Girard Estate Area Civic
Association; Tolentine Community Center and Development
Organization; Thomas G. McFarland and Charles E. Rolan,
Appellants in No. 90-1309.
William K. Reilly, as Administrator, U.S. Environmental
Protection Agency, Stanley L. Laskowski, as Acting Director,
U.S. Environmental Protection Agency Region III, and Samuel
Skinner, as Secretary, U.S. Department of Transportation,
Appellants in No. 90-1410.
 Nos. 90-1309, 90-1410.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 16, 1990.
Decided May 6, 1991.
Rehearing and Rehearing In Banc Denied
in No. 90-1309 June 3, 1991.
 
 Richard G. Feder, Fine, Kaplan & Black, and Jerome Balter (argued), Philadelphia, Pa., for appellants Delaware Valley Citizens Council for Clean Air; Delaware Valley Toxics Coalition; Sierra Club, Pennsylvania Chapter; Pennsylvania Federation of Sportsmens Clubs; Bicycle Coalition of the Delaware Valley; Girard Estate Area Civic Ass'n, Tolentine Community Center and Development Organization; Thomas G. McFarland and Charles E. Rolan at No. 90-1309.
 Michael Baylson, U.S. Atty., David F. McComb, Asst. U.S. Atty., Office of U.S. Atty., Stephen N. Field, Asst. Regional Counsel, U.S. E.P.A., Office of Regional Counsel, Region III, Philadelphia, Pa., Jill Grant, Office of Gen. Counsel, U.S. E.P.A., and Richard B. Stewart, Asst. Atty. Gen., W. Christian Schumann, David C. Shilton, and Ellen J. Durkee (argued), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for appellants William K. Reilly, as Adm'r, U.S. E.P.A., Stanley L. Laskowski, as Acting Director, U.S. E.P.A. Region III, and Samuel Skinner, as Secretary, U.S. Dept. of Transp. at No. 90-1410.
 Martha E. Blasberg (argued), Asst. Counsel, Dept. of Environmental Resources, Office of Chief Counsel, Eastern Region, Philadelphia, Pa., and Dennis W. Strain, Litigation Coordinator, Department of Environmental Resources, Office of Chief Counsel, Harrisburg, Pa., for appellees Arthur A. Davis, individually, and Arthur A. Davis, as Secretary, Pennsylvania Dept. of Environmental Resources, Howard Yerusalim, as Secretary, Pennsylvania Dept. of Transp., and Robert P. Casey, as Governor, Com. of Pa. at Nos. 90-1309 and 90-1410.
 Before STAPLETON, HUTCHINSON and GARTH, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 I.
 
 1
 Delaware Valley Citizens Council for Clean Air, together with other public interest citizens and community groups and two individuals (collectively "the Citizens"),[1] appeal a final order of the United States District Court for the Eastern District of Pennsylvania. That order dismissed all of the Citizens' claims against appellee Commonwealth of Pennsylvania (Pennsylvania)[2] for violation of the Clean Air Act (Act), 42 U.S.C.A. Secs. 7401-7642 (West 1983 & Supp.1990), and its EPA-approved State Implementation Plan (Plan), as supplemented. The Citizens appeal was docketed here at No. 90-1309. At No. 90-1410, the United States Environmental Protection Agency (EPA)[3] also filed an appeal, limited to that portion of the district court's order that dismissed Count Two of the Citizens' complaint. In its appeal, the EPA asserts that a final decision dismissing Count Two is likely to work a collateral estoppel against it in Pennsylvania's related petition for review of an EPA order docketed at 90-3171, 932 F.2d 269. That petition for review challenges the EPA's refusal of Pennsylvania's request to add a second supplement (Supplement Two) to the Plan. The proposed second supplement would relieve the state from implementing anti-pollution measures set out in an EPA-approved first supplement (Supplement One) to the Plan.
 
 
 2
 We consolidated the Citizens' appeal at No. 90-1309 and the EPA's appeal at No. 90-1410. We will separately decide the merits of Pennsylvania's petition for review of the EPA's refusal of the state's second supplement.
 
 
 3
 In the consolidated appeals, the Citizens filed a complaint joining various claims against Pennsylvania and the EPA. Three of the counts the Citizens asserted against Pennsylvania involved claims that the Plan did not contain all of the provisions required by the Act. The remaining count charged Pennsylvania with failing to implement its Plan. The Citizens brought all four claims under 42 U.S.C.A. Sec. 7604, the citizen suit provision of the Act.
 
 
 4
 The district court's order dismissing the Citizens' claims against Pennsylvania finally disposed of those claims. The district court certified that order as final for immediate appeal under Federal Rule of Civil Procedure 54(b).
 
 
 5
 Counts One, Three and Four of the Citizens' second amended complaint charged directly that the Plan Pennsylvania had submitted to the EPA for attaining the Act's clean air standard, as revised and approved by the EPA, failed to meet the Act's requirements. We will affirm that portion of the district court's order dismissing those three counts under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Section 7604 of the Act does not give the district court subject matter jurisdiction over the Citizens' private suit alleging that Pennsylvania's Plan failed to comply with the Act. Those claims fall under Sec. 7607 of the Act. Section 7607 applies to suits that seek to compel the adoption of implementation plans that comply with the Act and requires that such suits be initiated as petitions for review in the courts of appeals. Because the Citizens refused to use the procedure that Sec. 7607 requires to compel compliance with the Act, the district court properly dismissed Counts One, Three and Four. We will, however, reverse that portion of the district court's order that dismissed Count Two. In Count Two, the Citizens claim that Pennsylvania has violated the terms of the Plan by failing to take appropriate steps to decrease ozone emissions in the Philadelphia area before March 15, 1985. We cannot eliminate, as a matter of law, the possibility that the Plan, as modified by Supplement One, requires Pennsylvania to undertake additional measures to improve air quality in the Philadelphia metropolitan area. Accordingly, we will vacate that portion of the district court's order dismissing Count Two of the complaint and remand this case to the district court for further proceedings consistent with this opinion.
 
 II.
 
 6
 The Clean Air Act is Congress's response to well-documented scientific and social concerns about the quality of the air that sustains life on earth and protects it from the harmful effects of the hard radiation permeating space beyond the limits of our atmosphere and from the degradation and pollution caused by modern industrial society. Any effort to control the quality of the air over a particular region must take into account many ever changing variables and involve even more fine value judgments about the means and effects of efforts to control and improve the air we breathe. Because of the indeterminate nature of the chaotic processes that affect air quality, and the complexities of the statistical measures used to approximate them, computation of the interactive effect of those variables and the efficacy of all the various means of control from time to time available are likely to generate argument within the scientific and technical community, to say nothing of the arguments from self-interest that the identification and implementation of appropriate pollution control measures are also sure to engender.
 
 
 7
 The arcane knowledge essential to resolve these disputes reasonably is foreign to non-experts, including judges. Accordingly, to insure, as far as possible, that the measures adopted from time to time to meet the desired end of improved air quality will be generated by reason and not just self-interest or arbitrary power, the statute gives the EPA primary responsibility for the setting of air standards and the means to effect them; but, perhaps in wisdom borne of occasional sad experience with sole reliance on expert bureaucracies to solve technical problems that impinge on the self-interest of powerful private and public groups, the statute also provides a means for publicly interested citizens to obtain judicial enforcement of the standards in the Act and to encourage the pursuit of means appropriate to attain those standards. Thus, on the one hand, Sec. 7607 allows groups such as the Citizens to hold the EPA to the Act's general standards in formulating and approving implementation plans by permitting them to petition for review of those plans in the courts of appeals. On the other hand, Sec. 7604 gives citizens the right to complain in the district courts about failures to act in accord with the terms of approved plans implementing either the Act's general standards or EPA's specific regulatory standards.
 
 
 8
 The Clean Air Act delegates to the EPA responsibility for setting national ambient air quality standards for certain air pollutants. See 42 U.S.C.A. Sec. 7409. Within nine months of the promulgation of a standard, each state must submit to the EPA a plan explaining how the state expects to "implement[ ], maint[ain], and enforce[ ]" the standard within that state. Id. Sec. 7410(a)(1). Each plan must include "emission limitations, schedules, and timetables for compliance with such limitations, and such other measures as may be necessary to insure attainment and maintenance" of the standards. Id. Sec. 7410(a)(2)(B). Each standard must be attained as expeditiously as possible. See id. Secs. 7410(a)(2)(A), 7502(a).
 
 
 9
 The Clean Air Act Amendments of 1977 set forth a planning process for areas that were not attaining these standards. The 1977 amendments made December 31, 1982 the deadline for each state to attain existing standards. See id. Sec. 7502(a)(1). The EPA, however, could extend the deadline for attainment of the ozone standard until no later than December 31, 1987 in states that could demonstrate they could not meet the 1982 deadline "despite the implementation of all reasonably available measures." Id. Sec. 7502(a)(2). The 1977 amendments also required states to establish a specific schedule for implementing a vehicle emission inspection and maintenance program for areas that had not attained the ozone standard by 1982. See id. Sec. 7502(b)(11)(B).
 
 
 10
 When the 1977 amendments were enacted, Pennsylvania had already submitted to the EPA a proposed plan for meeting the Act's ambient air standards. In 1979, Pennsylvania submitted revisions to that Plan. The revisions were designed to accommodate the 1977 amendments. As part of the revisions, the state requested and received an extension, until December 31, 1987, for the attainment of the ozone standard in three areas of the state, Allentown-Bethlehem-Easton, Philadelphia and Pittsburgh. The EPA approved these revisions with a condition; it ordered Pennsylvania to submit further revisions by July 1, 1982.
 
 
 11
 In the meantime, the EPA had set forth in a final policy statement the general terms that states would have to include in their 1982 plan revisions if those revisions were to gain EPA approval. Joint Appendix (Jt. App.) at 1-11[4] (reprinting State Implementation Plans: Approval of 1982 Ozone and Carbon Monoxide Plan Revisions for Areas Needing an Attainment Date Extension, 46 Fed.Reg. 7182-92 (1981)). The EPA's final policy statement said, among other things, that each state's revision had to (1) demonstrate attainment by 1987 and interim progress; (2) demonstrate attainment by the use of enforceable control measures; and (3) identify and adopt additional measures if the enforceable control measures do not show attainment by 1987.
 
 
 12
 Under the EPA's 1981 final policy statement and the condition the EPA attached to approval of the state's 1979 revisions, Pennsylvania submitted additional plan revisions in June of 1982. The 1982 revision predicted that a forty-four percent reduction in ozone-creating emissions would be required in the Philadelphia area if the ozone emissions standard were to be met. The 1982 revision also predicted that the measures Pennsylvania proposed would result in a 38.5 percent reduction of those emissions. From these premises, the revision predicted that the Philadelphia area would experience a shortfall of 5.5 percent in meeting the Act's ozone air quality standard. In early 1983, the EPA told Pennsylvania it would disapprove portions of the 1982 revision.
 
 
 13
 Pennsylvania sought to work things out with the EPA. On October 24, 1983, it submitted a supplemental plan revision, referred to by the parties as Supplement One. In this supplement, Pennsylvania appears to have committed itself to adopt and implement various additional emission control measures in order to meet, by 1987, the forty-four percent reduction in ozone emissions that the Plan predicted would be required to meet the EPA's standards. The EPA approved Supplement One and the 1982 Plan, as modified by Supplement One. In doing so, the EPA noted that Pennsylvania had set forth "several extraordinary emission reduction measures which will be used to eliminate the 5.5% shortfall...." Approval of Revisions to the Pennsylvania State Implementation Plan, 50 Fed.Reg. 7772, 7774 (1985), reprinted in Jt. App. at 280B.
 
 A.
 
 14
 Against this general background, we relate some of the details of the administrative proceedings involving Pennsylvania and the EPA that more immediately preceded this case.
 
 
 15
 Six months after Supplement One was approved, Pennsylvania submitted another proposed revision to its Plan, known as Supplement Two, concerning ozone producing emissions. Based on updated point source emission data, but not updated mobile or area source data, and based on subsequent reprojections, Pennsylvania reversed itself and now predicted that additional control measures would not be needed to attain the required forty-four percent emission reduction by 1987.[5] Four years later, and more than one year after the 1987 standard should have been attained, the EPA disapproved Supplement Two. The EPA said it disapproved Supplement Two because it could not be sure that the measures Pennsylvania had originally thought inadequate to meet the forty-four percent reduction were practically enforceable or, if enforceable, would maintain the ozone level at forty-four percent less than the initial measurements without using Supplement One's additional control measures.
 
 
 16
 One month later, Pennsylvania petitioned the EPA for reconsideration of its disapproval of Supplement Two. This time, Pennsylvania submitted actual 1987 data it said demonstrated attainment of a forty-four percent reduction in ozone in the Philadelphia area in 1987. The EPA denied the petition for reconsideration, primarily because Supplement Two did not demonstrate to the EPA's satisfaction that the forty-four percent reduction could be maintained and because Pennsylvania's use of new data on ozone reduction could not be accurately correlated with the earlier data predicting the emissions reductions needed to attain the standards. The EPA concluded that an accurate comparison required all the earlier data to be updated.
 
 
 17
 As noted, Pennsylvania filed a timely petition for review of the EPA's refusal to approve Pennsylvania's proposed Supplement Two with this Court and that petition, docketed at No. 90-3171, is the subject of our related opinion released today.
 
 B.
 
 18
 While Pennsylvania was seeking approval for Supplement Two, private groups of citizens interested in improving air quality in the Delaware River valley had become increasingly dissatisfied with the failure of the EPA to require, and Pennsylvania to implement, measures that would even belatedly meet the Act's ozone standards. On April 11, 1989, while Pennsylvania's petition for reconsideration of the EPA's disapproval of Supplement Two was still pending with the EPA, these groups acted. The Citizens filed suit against both Pennsylvania and the EPA under the citizen-suit provision at Sec. 304 of the Act, codified at 42 U.S.C.A. Sec. 7604. A second amended complaint was filed in October of 1989. As against Pennsylvania, Count One of the second amended complaint alleges that Pennsylvania violated its statutory duty to implement a motor vehicle emission and inspection maintenance program in areas of the state that had not attained the ozone standard by 1982. Count Two alleges that Pennsylvania violated the terms of the Plan by failing to promulgate enforceable regulatory measures to decrease ozone emissions in the Philadelphia area by March 15, 1985. In Count Three, the Citizens say that Pennsylvania violated its statutory duty to revise the Plan from time to time to take advantage of improved or more expeditious methods that Pennsylvania knew or should have known were available as an aid in attaining the standard. In Count Four, the Citizens claimed that Pennsylvania had a statutory obligation to attain the ozone standard in various areas by various dates, failed to attain that standard, and then failed to adopt enforceable additional measures that it was obliged to adopt. In response, Pennsylvania filed a motion to dismiss the complaint's four counts against it.
 
 
 19
 The district court dismissed Counts One and Three for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because those counts, in effect, asked the district court to review EPA's approval of the Plan, a review 42 U.S.C.A. Sec. 7607(b)(1) entrusts solely to the courts of appeals. The court stated that, unless amended, Count Four would be dismissed for the same reason. Because Count Four was grounded on violations that might have occurred within sixty days of the Citizens' filing of their notice of intent to sue, the district court noted that with the proper amendment, the claim asserted in Count Four would not be time barred under Sec. 7607 and so could be transferred to this Court. At that time, the Citizens could still have sought a timely review of the Plan in this Court, but the time within which that petition could be brought has now passed.
 
 
 20
 Count Two was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. The district court decided that under the applicable laws and regulations Pennsylvania need only attain the forty-four percent standard. Once Pennsylvania had shown that it met the forty-four percent standard, the district court held that the additional enforcement measures set out in Supplement One were unnecessary and so need not be used.
 
 
 21
 The Citizens did not amend Count Four. The district court then dismissed that count under Rule 12(b)(1) for lack of subject matter jurisdiction. With the remaining counts against the EPA still pending, the Citizens moved to certify the judgments in favor of Pennsylvania as final pursuant to Federal Rule of Civil Procedure 54(b). The district court granted the motion, and the plaintiffs filed this appeal. Fearing the effect an order affirming the district court's dismissal of Count Two would have on Pennsylvania's pending petition for review of the EPA order rejecting proposed Supplement Two, the EPA, which had not actively taken part in the district court case until this point, joined the Citizens in appealing the dismissal of Count Two.[6]
 
 III.
 
 22
 The subject matter jurisdiction of the United States District Court for the Eastern District of Pennsylvania over the Citizens' suit asserting that Pennsylvania and the EPA were in violation of the Clean Air Act depends on Sec. 7604. See 42 U.S.C.A. Sec. 7604(a)(1). The district court certified its order as a final judgment for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b). Certification of an order under Rule 54(b) is appropriate if it represents a distinct final judgment and the matter is ripe for appeal. See Sussex Drug Prods. v. Kanasco, Ltd., 920 F.2d 1150, 1153 (3d Cir.1990). If the district court properly made that certification, we must then exercise jurisdiction over this appeal pursuant to 28 U.S.C.A. Sec. 1291 (West Supp.1990). See Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 14 (3d Cir.1990) (per curiam ). We conclude that the judgment certified was final and the district court did not abuse the discretion it has under Rule 54(b) to certify the judgment for prompt appeal. Therefore, we have jurisdiction over this appeal pursuant to 28 U.S.C.A. Sec. 1291.
 
 IV.
 
 23
 We will first discuss the district court's dismissal of Counts One, Three and Four for lack of jurisdiction and then consider the aspects of its order granting Pennsylvania's motion to dismiss Count Two for failure to state a claim.
 
 A.
 
 24
 The district court dismissed Counts One, Three and Four pursuant to Federal Rule of Civil Procedure 12(b)(1) after concluding Sec. 7604 of the Act did not give it subject matter jurisdiction over those counts. We exercise plenary review over dismissals under Rule 12(b)(1). See York Bank & Trust Co. v. Federal Sav. & Loan Ins. Corp., 851 F.2d 637, 638 (3d Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).
 
 
 25
 In Count One, the Citizens allege that Pennsylvania has a statutory duty to "establish a specific schedule for implementation of a vehicle emission control inspection and maintenance program," 42 U.S.C.A. Sec. 7502(b)(11)(B), and that it failed to do so. In Count Three, the Citizens allege that Pennsylvania has a statutory duty to take into account the availability of improved or more expeditious methods of achieving the ozone standard, see id. Sec. 7410(a)(2)(H)(i), and that it has not done so. They contend that Pennsylvania's obligation to undertake available measures sufficient to meet the Act's standards is independent of any EPA-approved plan and so enforceable by action in the district court even if those measures are not included in the plan or any of its revisions. They say the statute requires states with regions where air quality has not yet attained the ozone standard to use all reasonably available measures whether the EPA has included them in the plan or not. In support, the Citizens cite 42 U.S.C.A. Secs. 7410(a) and 7502(a). In Count Four, the Citizens also rely on statutory imperatives, alleging that the Commonwealth failed to review its Plan and adopt various enforceable measures to attain the ozone standard in contravention of 42 U.S.C.A. Secs. 7410(a)(2)(H) and 7502(c).
 
 
 26
 Pennsylvania argues that Sec. 7604 does not give the district court jurisdiction over private suits based on a theory that an EPA-approved plan is statutorily deficient, but that Sec. 7607, affording citizens' groups the right to petition a court of appeals for review of EPA action on a plan, is the sole and exclusive remedy available to private groups or citizens attacking a plan itself. Section 7607(b)(1) reads, in pertinent part:
 
 
 27
 A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412(c) of this title, under section 7413(d) of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c-10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.... Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise.
 
 
 28
 Section 7604 permits citizens to commence civil suits in the district court against persons who violate either emission standards or limitations promulgated under various sections of the Act or orders issued by the EPA or a state concerning those standards or limitations. In material part, Sec. 7604 reads:(a) [A]ny person may commence a civil action on his own behalf--
 
 
 29
 (1) against any person (including ... any ... governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
 
 
 30
 ....
 
 
 31
 The district courts shall have jurisdiction, without regard to amount in controversy or the citizenship of the parties, to enforce such emission standard or limitation....
 
 
 32
 (f) For purposes of this section, the term "emission standard or limitation under this chapter" means--
 
 
 33
 (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
 
 
 34
 . . . . .
 
 
 35
 (3) ... any condition or requirement under an applicable implementation plan relating to ... vehicle inspection and maintenance programs ... [ ]
 
 
 36
 which is in effect under this Chapter ... or an applicable implementation plan.
 
 
 37
 Id. Sec. 7604(a), (f).
 
 
 38
 Section 7604(a)(1) confers district court jurisdiction only over private actions that allege violations of a statutory "emission standard or limitation" or a related order, while Sec. 7604(f) limits the statutory definition of "emission standard or limitation" to one "in effect under this Chapter ... or an applicable implementation plan." Therefore, we conclude that Sec. 7604 provides citizens with a means to enforce EPA emission standards or limitations once they are "in effect", while Sec. 7607 allows citizens the opportunity to seek "review of [EPA's] action in approving or promulgating any implementation plan" establishing such standards or limitations. In short, citizens who claim that the emission standards themselves are inadequate must petition the appropriate court of appeals pursuant to Sec. 7607,[7] while citizens who merely wish to enforce the emissions standards may sue in district court pursuant to Sec. 7604.
 
 
 39
 The Citizens base their claims of statutory violation in Counts One, Three and Four on Secs. 7410(a)(2)(H)(i) and 7502(b)(11)(B). Section 7502(a) requires attainment of the Act's standards as expeditiously as possible. Section 7502(c) requires that the measures taken to enforce the Act's standards must be enforceable. Violation of Sections 7502(a) and (c) depends on failure to live up to the two other sub-sections the Citizens rely on. Those two remaining sections designate, in general terms, what an acceptable plan must provide. If neither Sec. 7410(a)(2)(h)(i) or Sec. 7502(b)(11)(B) support an action in the district court Counts One, Three and Four must fail. Under Sec. 7410(a):
 
 
 40
 (2) The Administrator shall, within four months after the date required for submission of a plan under paragraph (1), approve or disapprove such plan or each portion thereof. The Administrator shall approve such plan, or any portion thereof, if he determines that it was adopted after reasonable notice and hearing and that--
 
 
 41
 . . . . .
 
 
 42
 (H) it provides for revision, after public hearings, of such plan (i) from time to time as may be necessary to take account of revisions of such national primary or secondary ambient air quality standard or the availability of improved or more expeditious methods of achieving such primary or secondary standard
 
 
 43
 ....
 
 
 44
 Id. Sec. 7410(a)(2)(H)(i). Section 7502(b) requires that:
 
 
 45
 The plan provisions required by subsection (a) of this section shall--
 
 
 46
 . . . . .
 
 
 47
 (11) in the case of plans which make a demonstration pursuant to paragraph (2) of subsection (a) of this section--
 
 
 48
 . . . . .
 
 
 49
 (B) establish a specific schedule for implementation of a vehicle emission control inspection and maintenance program....
 
 
 50
 Id. Sec. 7502(b)(11)(B).
 
 
 51
 Counts One, Three and Four of the Citizens' complaint against Pennsylvania rest on direct violations of these sections of the statute itself, not violations of any version of the Plan involved in this case. The Citizens' right to bring those claims in the district court must rest on a specific violation of an emission standard or limitation that is in effect under or in accordance with these sections of the Act. Neither Sec. 7410(a)(2)(H)(i) nor Sec. 7502(b)(11)(B) deal with emission standards or limitations. They outline what an implementation plan must contain to get EPA approval. They do not support a citizens' suit under Sec. 7604. The Citizens' reliance on Wilder v. Thomas, 854 F.2d 605, 612-13 (2d Cir.1988), cert. denied, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989), to support their argument that statutory violations are actionable under Sec. 7604 is misplaced. The Wilder plaintiffs were claiming violations of the contents of a plan. The Citizens are not.
 
 
 52
 The United States Court of Appeals for the Ninth Circuit has dealt with this aspect of Sec. 7604, albeit in a somewhat different context. In Plan for Arcadia, Inc. v. Anita Assocs., 501 F.2d 390 (9th Cir.), cert. denied, 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309 (1974), a private plaintiff sought to compel various state and federal officials to promulgate regulations pursuant to the Act. The court of appeals held that Sec. 7604, then codified at 42 U.S.C.A. Sec. 1857h-2, did not give the district court jurisdiction to hear the case because "no applicable standards or orders [had] been issued." Id. at 392. Arcadia stands for the proposition that Sec. 7604 is not available for purely statutory violations of the Act unless standards or orders in accord with the Act are extant. Here, with respect to Counts One, Three and Four, none is, under either the Act or the plan.
 
 
 53
 American Lung Ass'n v. Kean, 670 F.Supp. 1285 (D.N.J.1987), aff'd, 871 F.2d 319 (3d Cir.1989), also does not help the Citizens case as to Counts One, Three and Four. There, the district court ordered a state and its officials to promulgate regulations necessary to conform to an approved implementation plan. See id. at 1288-91. In Kean, the district court merely enforced the plan. See id. at 1289 ("Liability in this case turns on the sole issue of whether New Jersey has complied with its own federally mandated plan."). Here, in Counts One, Three and Four, the Citizens asked the district court to direct Pennsylvania to do things the implementation plan does not provide because the Citizens believe the statute requires them.
 
 
 54
 Arcadia and American Lung persuade us that Sec. 7604 did not give the district court subject matter jurisdiction over the direct statutory violations Counts One, Three and Four allege. Moreover, as we have intimated, it would be wrong to consider Sec. 7604 in isolation. Consideration of Sec. 7604 along with Sec. 7607 fortifies our conclusion. Under Sec. 7607, private parties may seek to correct a plan's failure to meet the law's requirements by a petition for review filed in the courts of appeals. 42 U.S.C.A. Sec. 7607(b) ("A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 ... which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit."). Section 7607 allows citizen groups to petition the appropriate court of appeals for relief from an administrative refusal or failure to insist on an implementation plan reasonably calculated to meet requirements of the Act not yet embodied in precise standards or limitations. See, e.g., Natural Resources Defense Council v. EPA, 512 F.2d 1351 (D.C.Cir.1975).
 
 
 55
 The statutory basis for private actions based on what is in, or is not in, an approved implementation plan is found in Sec. 7607, unless the plan fails to meet an existing standard or limitation imposed under the Act. No such standard or limitation is involved in Counts One, Three and Four. We hold that Sec. 7604 does not permit redress of violations like those the Citizens set forth in Counts One, Three and Four. These claims can be asserted only by petition for review in the courts of appeals, not by complaint filed in the district court. Here, the Citizens were given a chance to proceed under Sec. 7607 and refused. It is now too late. The period for review has expired. See 42 U.S.C.A. Sec. 7607(b) (petition must be filed within sixty days of challenged agency action).
 
 
 56
 Accordingly, the Citizens cannot assert the claims set out in Counts One, Three and Four of their second amended complaint against Pennsylvania under Sec. 7604, and we will affirm the district court's order dismissing those counts of the Citizens' complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.
 
 B.
 
 57
 Section 7604 does allow the district courts to consider citizens suits seeking to police plan violations. Accordingly, the district court held it had jurisdiction to consider Count Two of the complaint, but dismissed that count pursuant to Federal Rule of Civil Procedure 12(b)(6), holding on the merits that Count Two failed to state a claim upon which relief could be granted. We exercise plenary review over a dismissal based on that ground. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990).
 
 
 58
 We accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. Dismissal under Rule 12(b)(6) for failure to state a claim is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved.
 
 
 59
 Id.
 
 
 60
 In Count Two, the Citizens say that Pennsylvania has failed to undertake certain additional emission control measures that Supplement One requires. They seek to make Pennsylvania "live up" to their alleged obligations in Supplement One. In Supplement One to the Plan, Pennsylvania promised, by December 31, 1987, to eradicate the 5.5 percent emission reduction shortfall the Plan initially predicted would remain if the only measures used were those the Plan initially set out. To make up this shortfall, the Supplement One revision proposed a number of specific additional measures. Supplement One went on to state:
 
 
 61
 A combination of these measures will be used to make up the emission reduction shortfall. Any new regulations that may be needed will be developed by [March 15, 1985.]
 
 
 62
 Supplement One to the Commonwealth of Pennsylvania's 1982 State Implementation Plan Revision at 12 (emphasis in original) reprinted in Appendix (App.) at 66a [hereinafter Supp. One].[8]
 
 
 63
 Joined by the EPA, the Citizens argue that the EPA's administrative disapproval of Pennsylvania's proposed Supplement Two to Pennsylvania's Plan implies that the EPA has construed Pennsylvania's Plan, as modified by Supplement One, to require Pennsylvania to adopt regulations and take all other appropriate actions necessary to enforce the "combination of ... measures" referred to in the quoted language from Supplement One, even if statutory ambient air standards are met at a particular point in time. As a practical matter, they say, even without considering possible technical deficiencies in Pennsylvania's measuring tools or protocols, data indicating statutory standards are met at any point in time are just as likely to have been caused by random fluctuations in the economic cycle acting upon the vagaries of the winds and currents of the atmosphere as by the measures Pennsylvania took under its Plan. The EPA and the Citizens also point out that a satisfactory reading at a particular moment in time does not offer reasonable assurance that the air quality over a region will remain satisfactory in the future.
 
 
 64
 Pennsylvania, on the other hand, contends that the district court's order of dismissal should be affirmed because that court's reading of the quoted text from Supplement One to require the additional measures only if the promised forty-four percent reduction were not attained is the only reading that makes sense in the real world. Pennsylvania's argument is simple. Not only does Pennsylvania say it didn't promise to institute the additional measures Supplement One sets out, but it claims its data show attainment of the ozone reduction it promised and the EPA agreed to accept. Pennsylvania says it is not only unfair, but silly to ask it to do more; and, anyway, insistence on more is impractical because the added measures will convert industrial regions into islands of unemployment and despair by creating production caps and forcing industry to shut down.
 
 
 65
 We reject Pennsylvania's arguments at this stage of the case. Its appeal to common sense is superficial in the context of the Clear Air Act's complexities and its argument about economic dislocation is unsupported and wholly inappropriate for consideration on a Rule 12(b)(6) motion to dismiss.
 
 
 66
 The district court's dismissal of Count Two for failure to state a claim upon which relief can be granted can stand only if the terms of Pennsylvania's Plan, as that Plan is modified by Supplement One, excuse Pennsylvania from adopting the additional measures Supplement One refers to whenever statistical interpretation of the shifting and uncertain data on emissions and their effect on air quality show attainment of a momentary forty-four percent reduction in ozone levels in the lower atmosphere. The Plan, with Supplement One, need not be read this way. To do so would give no meaning to Supplement One's use of the mandatory term "will" in the text quoted supra, at 267. In addition, we note that Supplement One reads at another point:
 
 
 67
 The Department commits to adopt and implement sufficient additional emission reduction measures to achieve a 44% emission reduction by December 31, 1987.
 
 
 68
 Supp. One at 11, reprinted in App. at 65 (emphasis in original). The word "commit" appears to take Pennsylvania's promise outside the subjunctive or conditional mood and place it squarely in the imperative. The Citizens have a possibly valid argument that Supplement One creates a duty to adopt the additional measures set forth. The district court incorrectly read Supplement One, as a matter of law, to require additional measures only if data gathered from continuing monitoring show that a shortfall in the agreed forty-four percent reduction remained on December 31, 1987. The plain language of the Plan, as modified by Supplement One, does not prohibit the interpretation that the Citizens assert in Count Two of their complaint.
 
 
 69
 The events that led to the EPA's acceptance of Supplement One buttress our conclusion that Pennsylvania may have in fact obligated itself to do more to reduce ozone emissions than the Plan initially required. Pennsylvania's June, 1982 submission identified a shortfall and then listed various measures that "could be used to make up the shortfall." Jt. App. at 267. However, the EPA disapproved this submission. Pennsylvania returned with a revised submission that would ultimately be approved as Supplement One. Among the changes in the new version was a rewording of the section concerning the additional measures that would be undertaken to reduce or eliminate the shortfall. In this revised submission, Pennsylvania listed the same measures that it did in the earlier version but went on to state that "[a] combination of these measures will be used to make up the emission reduction shortfall." App. at 66 (emphasis in original). The EPA's approval of the revised submission indicates that the change in wording--from the permissive "could" to the mandatory "will"--changed Pennsylvania's proposed obligation.
 
 
 70
 The Plan that Pennsylvania and the EPA agreed to, as modified by Supplement One, may actually require Pennsylvania to adopt some combination of the measures set forth in Supplement One without regard to any reading showing a momentary reduction of forty-four percent in the ozone levels in the lower atmosphere between the adoption of the Plan and the frozen moment of the reading. It should be stressed that we do not decide what the proper interpretation of the Plan is. What we decide today is that Pennsylvania's interpretation is not one that is required by the document as a matter of law and that the parties should have the opportunity to provide the court with a fuller context in which to determine the Plan's legal effect. Accordingly, we will vacate the district court's order dismissing Count Two of the Citizens' complaint against Pennsylvania for failure to state a claim upon which relief can be granted and remand for further proceedings consistent with this opinion.[9]
 
 V.
 
 71
 We will affirm the district court's dismissal of Counts One, Three and Four of the Citizens' complaint pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. We will, however, vacate its dismissal of Count Two pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and remand this matter to the district court for further proceedings consistent with this opinion. Each party to bear its own costs.
 
 
 
 [1]
 The citizen-group plaintiffs are: Delaware Valley Citizens Council For Clean Air; Delaware Valley Toxics Coalition; Sierra Club, Pennsylvania Chapter; Pennsylvania Federation of Sportsmens Clubs; Bicycle Coalition of the Delaware Valley; Girard Estate Area Civic Association; and Tolentine Community Center and Development Organization. The individual plaintiffs in this action are Thomas G. McFarland and Charles E. Roland
 
 
 [2]
 The designation "Pennsylvania" encompasses all of the state defendants in the Citizens' suit. The state defendants in the Citizens' suit are: Arthur A. Davis, as Secretary, Pennsylvania Department of Environmental Resources; Howard Yerusalim, as Secretary, Pennsylvania Department of Transportation; Robert P. Casey, as Governor; and the Commonwealth of Pennsylvania
 
 
 [3]
 The designation EPA encompasses all of the federal defendants in the Citizens' suit. The federal defendants in the Citizens' suit are: William K. Reilly, as Administrator, United States Environmental Protection Agency; Stanley L. Laskowski, as Acting Director, United States Environmental Protection Agency Region III; and Samuel Skinner, as Secretary, United States Department of Transportation
 
 
 [4]
 "Jt. App." refers to the Joint Appendix filed in No. 90-3171, the petition for review of the EPA's order. Use of the Joint Appendix in the related petition for review at No. 90-3171 provides a convenient means for setting forth the background to the issues in the Citizens' case, a background that is essentially uncontested
 
 
 [5]
 There are three generally recognized types of sources for polluting emissions: point sources which include particular plants or operators, mobile sources which include vehicles and area sources which include emissions from activities such as roadwork or dry-cleaning. See, e.g., Supplement # 2 to the 1982 Revision of the State Implementation Plan for Ozone and Carbon Monoxide for the Pennsylvania Portion of the Philadelphia Air Quality Control Region, August 23, 1985, Table 4, reprinted in Jt. App. at 294
 
 
 [6]
 While the EPA is not a party to the Rule 54(b) judgment, it is a party to the underlying suit. It seeks to join the Citizens as a party-appellant without the necessity of intervention. The EPA's standing to appeal is not essential to our consideration of this issue because the Citizens also raise the very same issue. However, after analyzing Pennsylvania's arguments, we believe that the EPA has a sufficient stake in the outcome of this case to join the Citizens' appeal as a party-appellant because Pennsylvania could use the judgment to collaterally estop the EPA in the administrative appeal at No. 90-3171. If we were to affirm the district court's order dismissing Count Two on the merits, it could arguably foreclose the EPA on Pennsylvania's petition for review of the EPA's order denying approval of Pennsylvania's Supplement Two. See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333-37, 100 S.Ct. 1166, 1171-73, 63 L.Ed.2d 427 (1980) (An appellant must "assert a continuing stake in the outcome of the appeal" and must be "aggrieved by a judgment or order of a district court [in order to] exercise the right to appeal therefrom."); cf. Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1939) (prevailing party entitled to appeal when it had already received all the relief it was entitled to but feared that a ruling on an immaterial issue might later be the basis for collateral estoppel)
 
 
 [7]
 Congress limited petitions to the court of appeals under Sec. 7607 to sixty days after the challenged action was published in the Federal Register or sixty days after the "grounds [for the petition] arise." It would permit an end run around this requirement if similar challenges to EPA action--such as the Citizens' here--could be brought in a district court under Sec. 7604
 
 
 [8]
 "App." refers to the Appendix filed in No. 90-1309, the Citizens' appeal
 
 
 [9]
 Our judgment vacating the district court's ruling on Count Two eradicates any preclusive effect that ruling might have with regard to the administrative appeal pending in Pennsylvania Dep't of Envtl. Resources v. EPA, 932 F.2d 269 (3d Cir.1991). Cf. United States Gypsum Co. v. Schiavo Bros., 668 F.2d 172, 184 (3d Cir.1981) (for res judicata purposes there must be a decision on the merits that has not been reversed on appeal), cert. denied, 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982)